# McIntyre *v.* Orner.

[No. 20,610.    Filed January 30, 1906.]

1. HIGHWAYS.—*Use of.*—*Automobiles.*—*Negligence.*—The use of an automobile upon the public highways is not forbidden, and the user is liable only for negligence in the use thereof. p. 62.

2. NEGLIGENCE.—*Automobiles.*—*Care Required in Passing Teams.* —The owners and users of automobiles must take notice that the appearance and noise of such vehicles are likely to frighten teams of ordinary gentleness, and must govern themselves accordingly. p. 63.

3. NEGLIGENCE.—*Automobiles.*—*Knowledge of Team's Fright.*— *Duty.*—Where the user of an automobile sees or by the exercise of ordinary care could see that a team in front of him is frightened and likely to become unmanageable, it is his duty to stop his machine and relieve such peril.    p. 63.

4. PLEADING. — *Complaint.*—*Automobiles.*—*Contributory Negligence.*—A complaint showing that defendant drove his automobile past plaintiff's team on his way to W., causing such team to become badly frightened to defendant's knowledge, and that defendant, on the return trip, negligently drove such automobile at a high speed up to within fifteen feet of plaintiff's team, does not show that plaintiff was guilty of contributory negligence in failing to get out of her carriage when she saw such automobile coming.    p. 64.

5. TRIAL.—*Instructions.*—*Negligence.*—*Invasion of Province of Jury.*—An instruction that if certain facts are found by the jury, the defendant is guilty of negligence and plaintiff should recover, is not an invasion of the province of the jury where the facts of the case exclude all possible modifying inferences to the contrary.    p. 65.

6. NEGLIGENCE.—*Automobiles.*—*Failure to Look Ahead.*—*Justification.*—It is no justification for defendant's failure to look ahead and see plaintiff's perilous situation, caused by defendant's automobile, that the running of the automobile required defendant's undivided attention.    p. 67.

7. SAME. — *Contributory.* — *Automobiles.* — *Failure to Stop on Seeing Perils.*—It is the duty of the user of an automobile, when he sees that his advance is endangering the occupants of a carriage, to stop or check his machine until such danger is averted, without regard to any negligence on the part of the occupants of such carriage.    p. 68.

8. TRIAL. — *Instructions.* — *Negligence.* — *Contributory.*—An instruction, in a negligence case, that if certain facts are found the verdict should be for plaintiff unless the jury further finds that plaintiff was guilty of contributory negligence, is not bad for its failure to state the facts which would constitute contributory negligence, where in another instruction contributory negligence was properly defined.    p. 68.

9. SAME. — *Instructions.* — *Contributory Negligence.* — *Sudden Peril*—*Care Required.*—An instruction that if plaintiff, finding herself in a sudden peril because of defendant's negligence in the use of his automobile, in jumping from her carriage acted naturally and as ordinarily prudent persons might act under like circumstances she would not be guilty of contributory negligence, is not erroneous.    p. 68.

10. NEGLIGENCE.—*Contributory.*—*Sudden Peril.*—One acting in view of a sudden peril caused by defendant's negligence is not guilty of contributory negligence because the same act done ordinarily would constitute contributory negligence.   p. 70.

11. TRIAL. — *Interrogatories to Jury.* — *Comment Thereon by Counsel.*—Counsel have the right, in their argument, to comment upon the interrogatories to the jury.   p. 70.

From Whitley Circuit Court; *Joseph W. Adair,* Judge.

Action by Susan Orner against William H. McIntyre. From a judgment on a verdict for plaintiff for $2,500, defendant appeals.   Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590.   *Affirmed.*

*James E. Rose* and *Marshall, McNagny & Clugston,* for appellant.

*Charles F. Holler, Andrew A. Adams* and *Luke H. Wrigley,* for appellee.

HADLEY, J.—Appellee successfully prosecuted this action against appellant to recover damages for injuries claimed to have been received by appellant's negligence in driving an automobile on the public highway.

The action is based upon the following .facts disclosed by the jury in answers to interrogatories: The plaintiff, being fifty-four years of age, and a resident of South Bend, about 3 o'clock p. m. on November 1, 1902, left the city of Auburn with the body of her deceased son to drive across the county to the town of Waterloo, there to take a train for home.   The plaintiff and her son occupied the rear seat, and Mr. Ling and Mr. Mayfield, friends of her deceased son, occupied the front seat, of a carriage, which, with team to draw it, had been procured at a livery-stable for the purpose, but without the knowledge and approval of the plaintiff.   One of the horses was to some extent afraid of automobiles and the other was not.   Ling, accustomed to driving and managing horses, drove the team without approval, but without any expressed objection from the plaintiff.   The road from Auburn to Waterloo runs in a

northeasterly direction. On the journey the hearse preceded the carriage containing the plaintiff. Later in the same afternoon appellant, with three other gentlemen, left Auburn by the same road for Waterloo in a gasoline automobile belonging to appellant. The machine was two-seated, could speed twenty miles an hour, and exploded its gasoline in a chamber, which to some extent deadened the sound. Appellant drove and managed the machine. On the journey it was necessary for appellant to look ahead to avoid holes and obstructions in the road; but on the occasion of the plaintiff's accident appellant was operating his machine in an unusual and extraordinary manner, by going at a high rate of speed when meeting teams. On the way to Waterloo appellant drove his automobile past the carriage in which the plaintiff was riding, greatly frightened the horses, and caused them to crowd to the side of the road. Both appellee and appellant saw the fright of the horses. Appellant proceeded with his party to Waterloo, remained but a short time, and started to return to Auburn. A short distance from the former town he met the funeral party. The hearse was 500 feet ahead of the carriage. A short distance before meeting the hearse, appellant drove his automobile to one side of the road and was about to stop when the driver of the hearse signaled him to come on. Appellant proceeded, and, having passed the hearse, he speeded his automobile towards the carriage at more than fifteen miles an hour, the machine puffing and making a great noise, and, when it approached within 200 feet of the carriage, the horses, in apparent fright, began crowding to one side of the road, and, when within fifteen or twenty feet of the plaintiff, whirled back into the road, and, in turning, the carriage cramped and broke a fore wheel, tipping the vehicle, and causing the plaintiff to be thrown out and injured. The driver held the lines firmly and taut, and an ordinarily cautious man could not have driven the team past the automobile, because it was approaching at a

high rate of speed. The driver did not request nor signal appellant to stop the machine; but, when the horses whirled around, appellant threw off the power and applied the brake, and stopped the automobile when within fifteen or twenty feet of the plaintiff. The team manifested fright when the automobile was 200 feet away, seeing which an ordinarily prudent man would have anticipated that the further forward movement of the machine would likely cause injury to the occupants of the carriage. If appellant had run his machine at less speed, it would have made less noise. He operated it in a careless manner, because he speeded it too fast and too close to the team.

There are two paragraphs of complaint, both proceeding upon the theory that the plaintiff was injured by the negligence of appellant in continuing to run his automobile on the highway at an excessive speed, and in failing to stop, or slow up, when, as alleged in one paragraph, "he saw from the frightened condition of plaintiff's horses that to proceed further would result in injury to the plaintiff," and, in the other, by the exercise of reasonable care he might have known that fact. As relating to the question of negligence the complaint alleges: "That as said defendant approached said carriage with his said automobile, and when he was yet more than three hundred feet distant therefrom, the horses attached to said carriage drawing the plaintiff and her said companions became badly frightened at the approach of said automobile, the loud noise made by the propulsion thereof, and the operation of its said motor, the high and dangerous rate of speed—more than fifteen miles an hour—at which the same was approaching them, and the size and appearance of said vehicle, and plunged, reared, shied and exhibited all of the evidences of fear usually manifested by horses when greatly frightened, * * * and said defendant, well knowing said frightened condition of said horses, well knowing, also, that his said automobile, the approach thereof at said high and dangerous rate of

speed, and the noise made thereby, were the cause of such fright, and well knowing that the nearer approach of his said automobile at said speed and under the circumstances aforesaid would greatly increase the fright of said horses, without exercising or using any care whatever, carelessly, recklessly and negligently propelled his said automobile at said high and dangerous rate of speed up to and until the same was within less than fifteen feet of said horses before the same was stopped or the speed thereof checked, * * * causing said horses to whirl around in said highway and run away to the south along the same, breaking one of the wheels of said carriage to which they were attached, and throwing the plaintiff with great violence out of said carriage upon the hard ground, whereby," etc. Is this a sufficient averment of negligence?

The employment of the automobile on the public highways, as a means of transportation, has been recognized in this State as a lawful use of the road (Acts 1905, p. 202, §8703a *et seq.* Burns 1905; *Indiana Springs Co.* v. *Brown* [1905], 165 Ind. 465), and if it results in injury to one traveling by another mode, the autoist can not be held liable for the injury, unless it is made to appear that he used the machine at a time, or in a manner, or under circumstances inconsistent with a proper regard for the rights of others. There is nothing dangerous in the use of an automobile when managed by an intelligent and prudent driver. Its guidance, its speed and its noise are all subject to quick and easy regulation, and under the control of a competent and considerate manager it is as harmless, or may soon become as harmless, on the road, as other vehicles in common use. It is the manner of driving an automobile on the highway, too often indulged in by thoughtless pleasure seekers and for the exploitation of a machine, that constitutes a menace to public safety. While it is the law that the owners of automobiles, subject to

statutory restrictions, have equal right with the owners of other vehicles to occupy the highways, it must be borne in mind that this equality of right imposes the reciprocal duty of managing one's vehicle, whatever its character, with care and caution to avoid causing injury to others with equal rights. As we said in *Indiana Springs Co.* v. *Brown, supra:* "Each is required to regulate his own use by the observance of ordinary care and caution to avoid receiving injury, as well as inflicting injury upon the other." Within these principles it was incumbent upon appellant to take notice, because it is a matter of common knowledge

2. that motor carriages are, as yet, usually strange objects to horses, and likely to startle them when driven up in front of them at a rapid rate. We assume, therefore, that defendant knew when he met the plaintiff's carriage on his return to Auburn, especially after the fright he observed in the horses as he passed them on the way to Waterloo, that his car, operated in the manner and at the speed described, was highly calculated to frighten the horses, and liable to cause them to injure the occupants of the carriage. With such knowledge it was appellant's duty to keep a lookout ahead, and as he approached the carriage note the effect of his onward movement upon the horses, and when he saw, or could have seen by the exercise

3. of reasonable caution, that the horses were, under excitement, forcibly crowding off of the road, and manifesting unmistakable fright, ordinary care required him to slow up, stop his machine, or do whatever was reasonably required to relieve the persons in the carriage of their perilous situation.

In *Shinkle* v. *McCullough* (1903), 116 Ky. 960, 77 S. W. 196, 105 Am. St. 249, it is said: "If * * * appellant knew, or could have known by the exercise of ordinary care, that the machine in his possession and under his control had so far excited appellee's horse as to render him dangerous and unmanageable, it was his duty to stop

his automobile, and take such other steps for appellee's safety as ordinary prudence might suggest."

See, also, to same effect *Christy* v. *Elliott* (1905), 216 Ill. 31, 74 N. E. 1035. This, it is alleged, appellant did not do, but, on the contrary, upon seeing the plaintiff's team rearing and plunging with fright, when 300 feet away, knowingly drove his machine into their faces at the rate of more than fifteen miles an hour, without stopping, or checking his speed, until within fifteen or twenty feet of the plaintiff. As a charge of negligence this is far within the limits of the rule.

Appellant insists that the complaint shows upon its face that appellee was guilty of contributory negligence. The claim springs from the averments "that the plaintiff 4. was traveling with three other persons in a two-seated covered carriage, drawn by a team of gentle, well-broken horses, which were in charge of, and driven by, a competent and careful driver, who sat upon the front seat of said carriage, while the plaintiff and her son occupied the rear seat," and "on the road to Waterloo appellant, in his automobile, rapidly and with great noise, passed the carriage in which the plaintiff was riding, whereby the horses attached to said carriage became greatly frightened, and reared, plunged and became almost unamanageable."

It is argued that, since it is shown that appellee occupied the carriage when appellant drove his automobile by it on the road to Waterloo, we must presume, because not denied, that she, as well as appellant, beheld the fright and conduct of the horses; and when appellant was about to meet the carriage on his return from Waterloo and saw, as alleged, the horses plunging and crowding when the automobile was 300 feet distant, we must also presume that appellee in the carriage saw the automobile coming as far as appellant in the automobile saw the frightened horses plunging, and so seeing and knowing the increasing peril it was negligence on her part to remain in the carriage and make no

McIntyre *v.* Orner—166 Ind. 57.

effort to reach a place of safety, or have the horses secured. The specific allegations of the complaint are not sufficient to overcome the presumption of noncontributory negligence created by the statute. *Greenwaldt* v. *Lake Shore, etc., R. Co.* (1905), 165 Ind. 219. If we could presume that the plaintiff saw the automobile coming when 300 feet away, and the team was at the time rearing and plunging, we could not presume that her failure to jump out of the carriage was negligence. It might have been far more dangerous under the circumstances to attempt to alight than to remain seated in the carriage. We think the second paragraph of the complaint is good and that the demurrer thereto was properly overruled.

Complaint is made of the giving and refusing of certain instructions. In the third instruction given, the court, after directing the jury that if they found from the evidence the existence of certain enumerated facts relating to the conduct of appellant in the operation of his automobile at the time of the plaintiff's accident, continued: "If the facts established by the evidence are as above stated, then you should find for the plaintiff, unless you should also find it established by a fair preponderance of the evidence that there was contributory negligence on the part of, or imputable to, the plaintiff, which precludes a recovery by her." It is objected, first, that the instruction is erroneous, because the court had no right to declare that any state of facts—if the question of negligence was to go to the jury—constituted negligence; that the most the court could have properly done was to set out a group of facts and authorize the jury to construe them under the law with all the other facts and circumstances in evidence, in determining the question of negligence. We think the rule here contended for by appellant is too narrow. There are frequent cases, no doubt, where certain facts in evidence may be selected, which, if standing alone, would constitute negligence, but which, when considered with other

facts and circumstances in evidence of a modifying char-
acter, renders the question of negligence equivocal. In such
cases it would clearly be error for the court to enumerate
only the former class of facts, and direct the jury, if they
found them proved, that they should find the existence of
negligence; and equally erroneous if the unstated facts
would even tend to render the question of negligence doubt-
ful, or such as equally prudent persons would characterize
differently.

But the controlling facts of a case may be of a char-
acter and so fully stated as to exclude all reasonable and
possible modifying inference, and in such cases we see no
impropriety in the court's informing the jury whether such
facts if established are sufficient in law. In so doing there
is no invasion of the province of the jury. The facts are
for the jury, and the law for the court. If under the rules
of the law a given class of facts, embodying all the con-
trolling facts in evidence and the reasonable inferences
arising therefrom constitute negligence, or due care, it is
proper for the trial judge to tell the jury so for their
guidance in returning their verdict. His primary duty
on the bench is to see that the law is properly applied to
the facts, and in principle he is doing the same thing when-
ever he is called upon to consider the correctness of a
general verdict in the light of the special facts upon which
it is founded as disclosed by answers to interrogatories.

The general rule is thus stated in *Shoner* v. *Pennsylvania
Co.* (1892), 130 Ind. 170, 177: "In cases involving
questions of negligence, the rule is now settled that, where
the facts are undisputed [or found by a jury to exist], and
the inferences which may be drawn from them are not
equivocal, and can lead to but one conclusion, the court
will adjudge as matter of law that there is, or is not, negli-
gence." To the same effect, see *Mann* v. *Belt R., etc., Co.*
(1891), 128 Ind. 138, 141; *Board, etc.,* v. *Bonebrake*

McIntyre *v.* Orner—166 Ind. 57.

(1896), 146 Ind. 311, 316; *Oleson* v. *Lake Shore, etc., R. Co.* (1896), 143 Ind. 405, 32 L. R. A. 149.

It is not claimed by appellant that the facts summed up in the instruction were insufficient of themselves to constitute negligence; but he claims that the hypothesis 6. should have embraced an additional fact shown by the evidence which tended to excuse him for not heeding the fright of appellee's horses and stopping his automobile sooner, namely, that he, as manager of the automobile, did not have time and opportunity to look, because it was necessary for him to keep his eyes and attention fixed on the track of the road to enable him to guide the machine safely by the carriage and avoid chuck holes and other obstacles.

We are unwilling to admit that the omitted fact would have furnished appellant with a shadow of justification for continuing to speed his machine at more than fifteen miles an hour to within fifteen or twenty feet of the carriage, and until the horses had whirled around, thrown the appellee out, and ran back onto the road. With the knowledge that the horses hitched to the appellee's carriage were nervous, and that he would soon meet them, it would be a strange rule of law that would permit him wilfully to put his automobile into a high rate of speed, and relieve him from the duty of looking ahead and of the consequences of seeing the frightened teams, because the speed of his car required his uninterrupted attention to the road. When, at the distance of 200 feet, he saw the team trying to break away with fright, it was appellant's duty under the law to stop or check up, and stop or lessen the noise of his motors, as it was shown he could easily have done within a few feet and within a few seconds. Because he did not do it under the circumstances shown and summed up by the court, but one conclusion can be drawn from his conduct.

On this point it is also suggested that a further fact should have been included in the hypothesis, to wit, that as

the team was successfully controlled when appellant

7. passed on the way to Waterloo, he had a right to believe he could pass them on his return without injury to the occupants of the carriage. Whatever warrant appellant might have had from this incident for such belief, it was completely nullified when, upon his return, approaching the horses, and 200 feet distant, he beheld the animals enter into violent efforts to break away. When it became evident to him that his further progress would increase the peril of those in the carriage, his duty was to stop, or at least to check up, without reference to whether the occupants of the carriage were guilty of negligence.

A further objection is made to this instruction because it defines what will constitute negligence, and does not define what will constitute contributory negligence.

8. Appellant has not the slightest ground for complaint on this point. In instruction number one, given upon the court's own motion, after enumerating the opportunities and acts of the plaintiff touching her relation to the driver, her knowledge of the habits of the team, her chance to see the automobile coming, her want of effort to seek a place of safety or to request appellant to stop, and other matters illustrative of her conduct precisely as was done in the behalf of the plaintiff in the instruction under consideration, concluded as follows: "Then I charge you as a matter of law that the plaintiff was guilty of such negligence contributing to her own injury as prevents a recovery in this action, and your verdict should be for the defendant." Our conclusion is that there was no error in the giving of the third instruction requested by appellee.

The sixth instruction given upon the request of appellee is also assailed. It is to the effect: It is claimed by the defendant that the plaintiff, when the team attached

9. to the carriage in which she was riding turned around in the highway and just before she was injured, stood up in the carriage and jumped or tried to

jump out of the same; that by so doing she was guilty of negligence which contributed proximately toward producing the injuries of which she complains; that if she had remained seated in the carriage she would not have been injured; and that she is therefore precluded from recovering in this case. Even though the jury may find from the evidence that the plaintiff, when the team turned around and just before she was injured, if she was, did stand up in the carriage, or did endeavor to get out of the same, and that no injury would have occurred to her if she had remained seated, still, "if you further find from the evidence that the plaintiff was in a situation of sudden peril, which was brought about by the defendant's negligence, that in standing up in the carriage and in trying to get out of the same she acted under a sudden fright and impulse created by such peril, that in so doing she acted naturally, and as ordinarily prudent persons might act when in like situation and under the influence of like fright and like impulses," then it will be a question of fact for you to determine from the evidence whether she was guilty of contributory negligence in so standing up in said carriage and in trying to get out of the same. The words quoted furnish the grounds for the criticism. It is insisted that it was erroneous to direct the jury that, if the plaintiff acted as ordinarily prudent persons might act in a like situation and under the influence of like fright and impulse, the jury was at liberty to determine whether she was guilty of contributory negligence, the argument being that prudent men often act imprudently, and that the real test of prudence is what prudent men usually do, and the statement that if plaintiff acted as an ordinarily prudent person might act under like circumstances was an inaccurate statement of the rule. It may also be stated with equal logic that when a prudent person acts imprudently, he is not a prudent person. To say the most, the distinction is refined, and not likely to mislead the jury when modified and ex-

plained by the context, to wit, that if the jury found that the plaintiff was in a situation of sudden peril which was brought about by the defendant's negligence, and she acted under a sudden fright and impulse created by such peril, and in so doing acted naturally, that is, in a manner expected of ordinarily cautious persons, and as ordinarily prudent persons might act, that is, might be expected to act, or would act, or would likely act, the question of her contributory negligence was for the jury.

The rule quite applicable to the facts in this case was stated by this court in *Clarke* v. *Pennsylvania Co.* (1892), 132 Ind. 199, 17 L. R. A. 811, as follows: "One who does an act under an impulse or upon a belief created by a sudden danger attributable to another's negligence is not to be regarded as guilty of contributory fault, even though the act would be regarded as a negligent one if performed under circumstances not indicating sudden peril." See, also, *Indiana R. Co.* v. *Maurer* (1903), 160 Ind. 25; *Pennsylvania Co.* v. *McCaffrey* (1894), 139 Ind. 430, 29 L. R. A. 104. We are of the opinion that the instruction was not prejudicial to appellant.

Some complaint is made of the giving and refusing of a number of other instructions. We have carefully read and considered them all in the light of the evidence and accepted rules of the law, and find in them no substantial error, and, in view of the final conclusion we have reached in the case, see no important end to be subserved by a prolongation of this opinion.

The court, having indicated his intention to submit to the jury 140 interrogatories requested by appellant, permitted appellee's counsel, over appellant's objection, to read and comment upon the same to the jury. This was not error. *Chestnut* v. *Southern Ind. R. Co.* (1901), 157 Ind. 509; *Southern Ind. R. Co.* v. *Fine* (1904), 163 Ind. 617.

We find no available error. Judgment affirmed.