[No. 6949. Decided November 25, 1907.]

## SAMUEL JONES, *Respondent*, v. JAMES D. HOGE, *Appellant.*[1]

HIGHWAYS—AUTOMOBILES—INJURIES TO TRAVELERS. An automobile is not such a dangerous agency as to render the owner liable to travelers in the highway for injuries inflicted therewith by a servant irrespective of the scope of the employment, and merely because the owner has made it possible for the servant to take out the machine at his pleasure.

MASTER AND SERVANT—INJURY TO THIRD PERSON—NEGLIGENCE OF SERVANT—SCOPE OF EMPLOYMENT. The owner of an automobile is not liable to one who was run over by his incompetent chauffeur, where the machine was being operated without the knowledge or authority of the owner on a personal errand of the servant; since the act was not within the scope of the servant's employment.

[1] Reported in 92 Pac. 433.

Appeal from a judgment of the superior court for King county, Griffin, J., entered May 16, 1907, upon granting plaintiff's motion for a new trial, after sustaining defendant's challenge to the sufficiency of the evidence and motion for judgment, in an action for personal injuries sustained by a pedestrian by being run over by an automobile.  Reversed.

*Kerr & McCord*, for appellant.

*Jas. F. McElroy* and *A. A. Booth*, for respondent.

Root, J.—Respondent commenced this action to recover damages for personal injuries sustained by reason of being run over by defendant's automobile, operated by one Barnes as chauffeur.  The evidence showed that Barnes was employed by defendant to operate and care for his automobile, and to take the same to and from defendant's home whenever ordered so to do by himself or wife.  The machine was kept at a public garage, and Barnes was authorized to take the same therefrom whenever appellant or wife so directed, and to do so without making any request of the owners of the garage.  At the time of respondent's injury, Barnes had taken out the automobile without the knowledge or permission of either defendant or his wife, and was using the machine on an errand personal to himself.  He had been advised that neither the defendant nor his wife required the machine that evening, and his errand was one with which his employer was in no manner concerned.  At the close of the evidence at the trial, a challenge to the sufficiency of the evidence and a motion to withdraw the case from the jury and enter judgment for defendant was made, and sustained by the court.  Thereafter a motion for new trial was granted by the court solely upon the ground that the evidence tended to show that Barnes was not a competent and careful operator of an automobile, and was entrusted with its care, and having by his negligence injured an innocent person, his employer was liable for damages.

It is contended by respondent that an automobile is a machine of such danger as to render the owner thereof liable for injuries caused thereby, while operated by his chauffeur, and even though not engaged directly in his line of employment, if the master has made it possible for the chauffeur to take out and operate such machine at pleasure; that the master is holden to employ only such chauffeurs as are competent and careful, and must be holden for damages occasioned by their incompetency or recklessness when making use of the machine, even though out of the line of employment; and also that in this case Barnes was within the apparent scope of his authority. We do not think the contentions can be upheld. Barnes was not using the machine to carry out any purpose for which he was employed. We do not think that an automobile can be placed in the same category as locomotives, gunpowder, dynamite, and similarly dangerous machines or agencies. It is true that the operation of this machine is attended with some dangers not common to the use of the ordinary vehicle, and we believe and have already held that those who operate these machines must be held to that degree of care which is commensurate with the dangers naturally incident to their use. *Lampe v. Jacobsen,* 46 Wash. 533, 90 Pac. 654. But wo do not believe that the law would charge the owner of an automobile with a liability for damages caused by the operator thereof under the circumstances found here.

In the case of *Robinson v. McNeil,* 18 Wash. 163, 51 Pac. 355, this court held that, where a section foreman who had charge of a hand-car which he used to travel over the road, loaned the same to some boys, one of whom was thereby injured, the railway company was not liable as the foreman was not authorized to permit the hand-car to be used for such a purpose.

Huddy, on The Law of Automobiles, page 15, says this:

"The motor carriage is not to be classed with railroads, which, owing to their peculiar and dangerous character, are

subject to legislation imposing many obligations on them which attach to no others. Certainly a motor vehicle is not a machine of danger when controlled by an intelligent, prudent driver. . . . As bearing on this question, it has been stated by authority that out of a total of 3,482 deaths reported to the coroner's office in the city of Chicago for the year 1905, only five were caused by automobiles. For every death caused by an automobile in the city of Chicago there were more than seventy deaths caused by railroad accidents. Twelve people were killed by wagons to every one who met death at the hands of an automobile."

And at page 95 the same author says:

"Where a chauffeur uses his employer's automobile for his own personal pleasure and contrary to authority, a party negligently injured by the car cannot hold the employer liable, since the operator of the vehicle was not, at the time, acting for his employer and within the scope of his employment; however, the chauffeur is liable in damages."

The case of *Slater v. Advance Thresher Co.*, 97 Minn. 305, 107 N. W. 133, is one exactly in point. There an agent was furnished an automobile to be used in his principal's business whenever he desired. One day he took it out for a purpose personal to himself and distinct from his employer's business; and while so operating it, the horses of the plaintiff were frightened by the agent's negligent management of the machine, and ran away, injuring plaintiff. The supreme court of Minnesota held that the owner of the automobile was not liable. The case is well considered and many authorities bearing on the question are collated and discussed. Among other things the court said:

"It is elementary that the master is not liable for injuries occasioned to a third person by the negligence of his servant, while the latter is engaged in some act beyond the scope of his employment, for his own or the purposes of another, although he may be using the instrumentalities furnished him by the master with which to perform the ordinary duties of his employment, or, as expressed in Shear. & R., Neg. (3d ed.), § 63, that if the act complained of be committed by the

servant while at liberty from the service of the master and while pursuing his own interests exclusively, there can be no question of the master's freedom from liability, even though the injury would not have been committed without the facilities afforded the servant by his relation to the master. . . . The rule of law applicable to the care and protection of dangerous instrumentalities does not apply. That rule requires the master to exercise a proper degree of care to guard, control, and protect dangerous instrumentalities owned or operated by him, and, an injury occurring by reason of the improper use of such an instrumentality by a servant, though occasioned while not in the performance of his duty, the master is liable. But the principle on which liability is founded in such cases is the failure of the master to properly keep within his control such dangerous agencies. The rule is illustrated in *Mattson v. Minnesota & N. W. R. Co.*, 95 Minn. 477, 104 N. W. 443."

See, also, *Bogue v. Bennett*, 156 Ind. 478, 60 N. E. 143, 83 Am. St. 212; *Macomber v. Nichols*, 34 Mich. 212, 22 Am. Rep. 522; *Mason v. West*, 61 App. Div. 40, 70 N. Y. Supp. 478; *Oxford v. Peter*, 28 Ill. 434; *Campbell v. Providence*, 9 R. I. 262; *Atchison etc. R. Co. v. Randall*, 40 Kan. 421, 19 Pac. 783; *Brenner v. Ford*, 116 La. 550, 40 South 894; *Bowler v. O'Connell*, 162 Mass. 319, 38 N. E. 498, 44 Am. St. 359, 27 L. R. A. 173; *Maddox v. Brown*, 71 Me. 432, 36 Am. Rep. 336; *Fairchild v. New Orleans etc. R. Co.*, 60 Miss. 931, 45 Am. Rep. 427; *Patterson v. Kates*, 152 Fed. 481; *Ware v. Barataria etc. Canal Co.*, 15 La. 169, 35 Am. Dec. 189; *Engel v. Eureka Club*, 137 N. Y. 100, 33 N. E. 1052, 33 Am. St. 692; *Higgins v. Western Union Tel. Co.*, 156 N. Y. 75, 50 N. E. 500, 66 Am. St. 537; *King v. New York Cent. etc. R. Co.*, 66 N. Y. 181, 23 Am. Rep. 37; *Railway Co. v. Shields*, 47 Ohio St. 387, 24 N. E. 658, 21 Am. St. 840, 8 L. R. A. 464; *Quigley v. Thompson*, 211 Pa. 107, 60 Atl. 506; *McCarthy v. Trimmins*, 178 Mass. 378, 59 N. E. 1038, 86 Am. St. 490; 20 Am. & Eng. Ency. Law (2d ed.), 163; Mechem, Agency, §§ 737-8; 8 Current Law, 945-6; Huddy, The Law of Automobiles, pp. 95-98.

In the case of *Stewart v. Baruch*, 103 App. Div. 577, 93 N. Y. Supp. 161, the syllabus reads as follows:

"A chauffeur who in violation of the instructions of his employer takes out the latter's automobile for his own pleasure is not, in so doing, acting within the scope of his employment, and his employer is not responsible to strangers for his negligence."

In the case of `Indiana Springs Co. v. Brown*, 165 Ind. 465, 74 N. E. 615, the court said:

"The law does not denounce motor carriages, as such, on the public highways. For so long as they are constructed and propelled in a manner consistent with the use of highways, and are calculated to subserve the public as a beneficial means of transportation, with reasonable safety to travelers by ordinary modes, they have an equal right with other vehicles in common use to occupy the streets and roads. Because novel and unusual in appearance, and for that reason likely to frighten horses unaccustomed to seeing them, is no reason for prohibiting their use. In all human activities the law keeps up with improvement and progress brought about by discovery and invention, and in respect to highways, if the introduction of a new contrivance for transportation purposes, conducted with due care, is met with inconvenience and even incidental injury to those using ordinary modes, there can be no recovery, provided the contrivance is compatible with the general use and safety of the road."

In *Morier v. St. Paul etc. R. Co.*, 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793, the court said:

"The universal test of the master's liability is whether there was authority expressed or implied for doing the act; that is, was it one done in the course and within the scope of the servant's employment. If it be done within the course of and within the scope of his employment, the master will be liable for the act, whether negligent, fraudulent, deceitful, or an act of positive malfeasance. . . . But a master is not liable for every wrong which the servant may commit during the continuance of the employment. The liability can only occur when that which is done is within the real or apparent scope of the master's business. It does not arise when the

servant steps outside of his employment to do an act for himself not connected with the master's business. Beyond the scope of his employment the servant is as much a stranger to his master as any third person. The master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, in the course of his employment. The master is not responsible for any act or omission of his servant which is not connected with the business in which he serves him and does not happen in the course of his employment, and in determining whether a particular act is done in the course of the servant's employment, it is proper, first, to inquire whether the servant was at the time engaged in serving his master. If the act be done while the servant is at liberty from the service and pursuing his own ends exclusively, the master is not responsible. If the servant was, at the time when the injury was inflicted, acting for himself and as his own master *pro tempore*, the master is not liable."

In the case of *Reynolds v. Buck*, 127 Iowa 601, 103 N. W. 946, the court used this language:

"Conceding for the purposes of this appeal that the son was negligently operating the machine at the time of the accident, was such negligence chargeable to the defendant under the evidence? We are clearly of the opinion that it was not. The direct evidence all shows that his use of the electric automobile was solely for the pleasure and convenience of the young lady and himself, and that it was in no way or sense connected with his employment or the defendant's business. . . . The son had been given a holiday, and was master of his own time on that day. This is conclusively shown. The defendant had ordered the machine put away and did not know that his son wished or intended to use it. It was taken and used for the son's own pleasure, and we think the verdict was very properly directed for the defendant."

In the case of *Berman v. Schultz*, 84 N. Y. Supp. 292, where defendant's driver left an automobile temporarily, and a third person started the machine, causing an injury, the court said:

"It was not the duty of the defendant to chain the machine to a post or in some way fasten it, so that it was impossible

for it to be started by the act of a third person. The law did not impose upon the defendant a degree of care that made the starting of the machine impossible."

In the case of *Clark v. Buckmobile Co.*, 107 App. Div. 120, 94 N. Y. Supp. 771, this was said:

"Birdsall was the general manager of defendant while engaged in its business. . . . Davis was an employee of the defendant while engaged in its business, but when not so engaged he did not represent the defendant. These two men were in charge of the machine when the accident occurred. Davis was running it and Birdsall was giving more or less direction with reference to its movements. Neither of them was engaged in defendant's business, however. They did not represent the defendant, and it was not and is not liable for any negligence they were guilty of which caused plaintiff's injuries. Suppose they had taken a day off for pleasure and had borrowed or leased the machine from the defendant to enable them to enjoy their outing; would the defendant be liable for any injuries resulting from their negligence in operating the machine while they were out upon the road? Suppose after business hours any day they had borrowed or leased the machine from the defendant to enjoy a few hours' run across the country for their own pleasure, would the defendant be liable for any injury caused by their negligently operating the machine while they were out? It is quite apparent that in the cases suggested no liability of defendant would result. The reason is, that in order to establish liability, the persons must not only be generally employees of the defendant, but must be employed in the defendant's business, and not merely in their own recreation and pleasure at the time the injuries are caused."

Thompson on The Law of Negligence Vol. 2, § 525, employs this language:

"The rule, moreover, implies that the master will not in any case be liable for wrongs committed by the servant while not acting about the master's business, or, what is substantially the same thing, while not acting within the scope of his authority. This rule is so reasonable that the ground on which it rests need scarcely be suggested. In all the affairs of life men are constantly obliged to act by others, but no

one would venture so to act, if the mere circumstance that he employed another to act for him about any general or particular business, made him an insurer against a wrong which such person might possibly commit during the period of such employment. The law does not even put a father under such onerous responsibility in respect of torts of his minor children. . . . But in other cases, where the relation of master and servant subsists by virtue of a contract, and the servant instead of doing that which he is employed to do, does something which he is not employed to do at all, the master cannot be said to do it by his servant; and the maxim *qui facit per alium facit per se* does not apply. In other words, if the servant steps aside from his master's business for how short a time soever, to commit a wrong not connected with such business, the relation of master and servant will be taken to have been for the time suspended, and the act will not be treated as the personal act of the servant, and he alone will be responsible for it."

We think an examination of these and other authorities shows that the defendant in this case was not liable, that the motion for judgment was properly granted, and that it was error to set the same aside and grant a new trial.

The judgment of the honorable superior court is reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed.

HADLEY, C. J., RUDKIN, CROW, MOUNT, and DUNBAR, JJ., concur.