STEFFEN, Administrator, Appellant, vs. McNAUGHTON, Respondent.

*February 2—February 22, 1910.*

*Automobiles: Dangerous machines: Liability of owner for negligence of chauffeur: Scope of employment.*

1. An automobile is not inherently or *per se* a dangerous machine so as to render its owner liable on that ground alone for injuries resulting from its use.
2. The owner of an automobile is not liable for injuries caused by his chauffeur's negligent operation of the machine at a time when the chauffeur was using it for his own personal and pri-

vate purpose, not within the scope of his employment, and without authority or consent, express or implied, of the owner.

3. Where, under his contract of employment, a chauffeur was to furnish his own meals and, impliedly, might leave the service for such time at noon as was necessary for that purpose, his employment and the relation of master and servant were temporarily suspended during such time; and if in going to his home for his midday meal he used his employer's automobile without authority or permission he was not, while so doing, acting within the scope of his employment, the circumstances not being such as to show that he was merely availing himself of a privilege impliedly granted to facilitate his labor and service or in furtherance of the employer's interests.

APPEAL from a judgment of the circuit court for Outagamie county: JOHN GOODLAND, Circuit Judge. *Affirmed.*

On July 3, 1907, Anna Steffen was struck and killed in the city of Appleton by an automobile which was operated by the chauffeur of the defendant. The deceased came from Lawrence street, running east and west, and was crossing a part of State street, running north and south. As she approached State street from the west on Lawrence street she signaled a street car coming from the south on State street to stop. The car waited for her, and when she was about midway between the curb and the street car she turned her head and saw the automobile approaching from the north. She stopped, hesitated, and probably turned, and had taken a step backward when she was struck. She died shortly after. The chauffeur had had about five months' experience in the handling of automobiles and had been in the employ of the defendant a little less than two months. At the time of the accident the chauffeur was alone in the automobile and was going to his home for dinner. There is evidence that he saw the deceased step from the curb when he was about 150 feet from her; that he continued on his course without slacking the speed of the car, and that he attempted to pass between her and the curb. He claims that the deceased caused the collision by negligently stepping back toward the curb and in

front of the automobile; that he had turned toward the curb to pass her, and that it was impossible for him to avoid the collision because the space between her and the curb was insufficient for him to pass. The evidence varies much as to the rate of speed at which the car was traveling. The distance between the curb and the street car was about twenty feet, and the deceased was struck when nine or ten feet from the curb. The automobile was a five passenger, thirty horsepower machine. It was 112 inches long and sixty-seven inches wide. It weighed between 3,000 and 3,500 pounds. The chauffeur had full charge of the automobile under the direction of the defendant and his family and under his contract of employment. Under the contract of employment the defendant did not furnish the chauffeur with his meals, and the chauffeur went to his home for them. During the chauffeur's employment by the defendant he had taken the machine to a shop for repairs, and had taken and used it to go to his dinners, perhaps ten times. He had not been directed by his employer to use the machine for this purpose and he had never obtained permission so to use it. The defendant testified that he did not see the chauffeur so use the machine and that he did not know that he so used it. This is an appeal from the order of the court directing a verdict for the defendant and from the judgment on the verdict.

For the appellant there was a brief by *J. Elmer Lehr,* attorney, and *H. C. Sloan* and *A. M. Spencer,* of counsel, and oral argument by *Mr. Sloan.*

For the respondent there was a brief by *Doe & Ballhorn,* and oral argument by *J. B. Doe.*

Siebecker, J. The questions as to the defendant's liability which arise if it be assumed that the evidence permitted the inferences that the chauffeur's negligence was the proximate cause of decedent's injuries, and that she was free from contributory negligence, are these: First, Is an automo-

bile *per se* a dangerous machine? And, secondly, Was the chauffeur acting within the scope of his employment while driving the car at the time of the accident?

Upon the first inquiry we discover nothing in the construction, operation, and use of the automobile requiring that it be placed in the category with the locomotive, ferocious animals, dynamite, and other dangerous contrivances and agencies. When properly handled and used, automobiles are as readily and effectually regulated and controlled as other vehicles in common use, and when so used they are reasonably free from dangers. The dangers incident to their use as motor vehicles are commonly the result of the negligent and reckless conduct of those in charge of and operating them, and do not inhere in the construction and use of the vehicles. It is well known that they are being devoted to and used for the purposes of traffic and as conveyances for the pleasure and convenience of all classes of persons and without menace to the safety of those using them or to others upon the same highway when they are operated with reasonable care. The defendant cannot therefore be held liable upon the ground that the automobile is a dangerous contrivance. This view has been adopted by the courts in the following cases: *Slater v. Advance T. Co.* 97 Minn. 305, 107 N. W. 133; *McIntyre v. Orner,* 166 Ind. 57, 76 N. E. 750; *Lewis v. Amorous,* 3 Ga. App. 50, 59 S. E. 338; *Jones v. Hoge,* 47 Wash. 663, 92 Pac. 433; *Cunningham v. Castle,* 127 App. Div. 580, 111 N. Y. Supp. 1057.

Whether the chauffeur, at the time of the accident, was acting within the scope of his employment involves an inquiry into the contract of his employment and the relation of his acts at the time of the accident to the service he actually performed pursuant to his employment. The facts are that under his contract of service with *John McNaughton,* the owner of the automobile and the defendant in this case, he was to care for and operate the machine at the request and direction of the defendant or any member of his family; that he

was to devote his time to the performance of such services during the day and was to perform the actual duties of a chauffeur; that the defendant did not undertake to furnish him his meals, and for his midday meal he was allowed to go to his home, about one mile distant from the defendant's residence, where the automobile was kept; that he usually walked to his home for this meal; that he had used the automobile probably ten times to make this trip without obtaining the permission or consent of the defendant or any member of his family so to do; that he so used the machine on the day in question; and that he passed in and out of the defendant's premises adjacent to the house on such occasions, and that the defendant was at his home on some of them.    The defendant testifies that he at no time gave permission to or authorized the chauffeur to so use the automobile and that he had no knowledge that it was being used by him for this purpose.

It is obvious from the conditions of the contract of employment that it did not embrace the use of the automobile by the chauffeur for going to his meals; and the question, therefore, is: Do the facts warrant the inference that this use of it by the chauffeur was, under the circumstances of the case, "a permissive privilege granted to [him], of which he availed himself, to facilitate his labor and service, and . . . equally connected with it and the relation of master and servant?"    *Ewald v. C. & N. W. R. Co.* 70 Wis. 420, 428, 36 N. W. 15.    It is strenuously urged that the evidence on this subject permits of such an inference.    This contention is made on the grounds that the chauffeur used this machine to further his master's interests; that he thereby reduced the time for getting his meals and thus was able to devote more time to the service of the defendant; that the defendant gave him the control of the machine for the day without restriction, thereby enabling him to use it for this purpose; and that these and all the other conditions of his employment and service make the use of the machine on these occasions one

within the privileges of his service for facilitating his labor and service, thus bringing it within the scope and course of his employment. We are of opinion that the facts of the case do not permit of this inference. The conditions of the contract of employment, under which the chauffeur was to provide himself with meals, carried with it the further condition that he was to have the required time at noonday, and might leave the service for such a period of time as was required under the circumstances for this personal and private purpose. While he was so engaged his employment and the relation of master and servant were suspended for the time being, unless the facts of the case show that the defendant consented to the chauffeur availing himself of this use of the machine to facilitate his labor and service and in furtherance of the defendant's interests. The evidence will not support this inference. It is reasonably clear and certain that the defendant by his words, acts, and conduct never gave consent or permission to, nor did the contract of employment authorize, such a use of the machine by the servant. The facts and circumstances fail to show that the chauffeur was performing an act in obedience to an order or direction of the defendant or a member of his family, or that he was doing something with the implied consent of the defendant. The law governing the liability of a master for the acts of the servant in this class of cases is embodied in the following comprehensive statement:

"For all acts done by a servant in obedience to the express orders or direction of the master, or in the execution of the master's business, within the scope of his employment, and for acts in any sense warranted by the express or implied authority conferred upon him, considering the nature of the services required, the instruction given, and the circumstances under which the act is done, the master is responsible." *Ritchie v. Waller,* 63 Conn. 155, 160, 28 Atl. 30.

While the rule of such liability may readily be comprehended, its application to the varying facts in cases of this class is often attended with difficulty. The ultimate inquiry

usually resolves itself into one of fact, under the particular evidential facts and circumstances of the case. Other cases, similar in their nature and circumstances, are of service as an aid to the court in ascertaining what conditions are deemed to be within or without this rule of liability. We cite the following as bearing on the subject: *Joel v. Morison,* 6 Car. & P. 501; *Maddox v. Brown,* 71 Me. 432; *Slater v. Advance T. Co.* 97 Minn. 305, 107 N. W. 133; *Jones v. Hoge,* 47 Wash. 663, 92 Pac. 433.

Upon these considerations it must be held that the facts in evidence do not permit of the inference that the chauffeur at the time of the accident was acting in the execution of the defendant's business, or that the defendant granted him the privilege of using the machine on this occasion to facilitate his labor and service; and that the acts of the chauffeur were not connected with his service and were not performed within the course of his employment.

This conclusion disposes of the case, and no other question need be considered.

*By the Court.*—Judgment affirmed.