## Tyler v. Stephan's Administratrix.

(Decided March 26, 1915.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Master and Servant—Dangerous Appliances—Automobile—Liability of Master.—An automobile is not such a dangerous contrivance as to render the owner liable for its mere use by a chauffeur for purposes exclusively his own.

2. Master and Servant—Injury by Automobile—Act of Chauffeur—Liability for Injury to Third Person—Scope of Employment.—Where a chauffeur, under general instructions to return the automobile to the garage under such circumstances, takes the owner to an entertainment at 9:30 P. M., and is directed to return for her at 12:00 P. M., instead of returning the automobile to the garage takes the machine without the knowledge or consent of the owner and goes on a journey exclusively his own and having no connection with the owner's business, the owner is not liable for an injury occurring on such journey.

FRED FORCHT for appellant.

JOSEPH SELLIGMAN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY—
COMMISSIONER—Reversing.

On the night of February 24th, 1913, Mildred M. Stephan was struck and killed by an automobile belong-

ing to Elizabeth J. Tyler and operated by her chauffeur, William Schuman. In this action for damages Emma G. Brown, as administratrix of Mildred M. Stephan, recovered a verdict and judgment for $4,000.00. Elizabeth J. Tyler appeals.

The facts are these: Mrs. Tyler resides at St. James Court, between Fourth and Sixth Streets, in the City of Louisville. Harry I. Wood lives at Second and Brandeis Streets. On the night of the accident Mr. and Mrs. Wood gave an entertainment to which Mr. and Mrs. Tyler and their daughter were invited. About 9:30 p. m. the chauffeur took Mrs. Tyler and her daughter to Mr. Wood's residence. The chauffeur was then instructed to return for Mr. Tyler, which he did. He was then directed to return to Mr. Wood's residence about 12 o'clock for the purpose of taking Mr. and Mrs. Tyler and their daughter back home. Prior to that time Mrs. Tyler had given express instructions always to take the car back to her own garage. Instead of returning to Mrs. Tyler's garage, which was only a short distance away, the chauffeur went in an entirely different direction to the eastern part of the city to the Reimers Motor Company's garage where a friend of his, Tom Gudgel, was employed. While there Gudgel requested Schuman to take him to Third and Hill Streets, where Gudgel had to go to get an electric automobile. Schuman at first declined. Gudgel then offered to take Schuman out to Eiler's road house on the Bardstown Road and treat to the drinks, provided Schuman would take him to Third and Hill Streets. To this arrangement Schuman finally consented. They then got into the automobile and went up Broadway and out the Bardstown Road beyond Douglas Boulevard and stopped at Eiler's road house, where Gudgel purchased a coca-cola for himself and a glass of beer for Schuman. They then started back to town with the purpose of going first to third and Hill Streets, in accordance with the arrangement theretofore made. Gudgel says that he was going to Third and Hill and Schuman was going after his folks. The route taken was the direct route to Mr. Wood's. Schuman says that he was going to the southern part of the city for the purpose of taking Gudgel there. It was then a little before eleven o'clock and too early to go for Mrs. Tyler. He intended to go first to Third and Hill and then go to Second and Brandeis and wait. After leaving Eiler's road house and reaching a point on the Bardstown Road between Bonnycastle

and Murray Avenues the accident occurred. The place of the accident was only a few squares from Eiler's and about two miles from the Wood residence. Just prior to the accident a street car had stopped and then started. The decedent came from behind the car directly in front of the machine. The machine was running at about twenty miles an hour. It does not appear that decedent had been a passenger on the car. At the time of the accident the muffler was open and made a noise which could be heard for two squares. No other signal of the approaching machine was given. Schuman further testifies that he made the trip to Reimers' and out to Eiler's without the permission or consent of Mrs. Tyler. He made the trip for his own purposes alone and not for the purpose of attending to any business for Mrs. Tyler. The propriety of the court's action in refusing to direct a verdict in favor of the defendant is the only question which we deem it necessary to consider.

The rule of law applicable to the care and protection of dangerous instrumentalities does not apply. That rule requires the master to exercise a proper degree of care to guard, control and protect dangerous instrumentalities owned or operated by him and to respond in damages for an injury incurred by reason of the improper use of such an instrumentality by a servant though not then engaged in the performance of his duties. The principle on which liability is founded in such cases is the failure of the master properly to keep within his control such dangerous agencies. Manifestly, an automobile which becomes dangerous only when negligently operated cannot properly be placed in the same category with locomotives, dynamite, and ferocious animals. Consequently the courts have generally rejected this ground of liability. Jones v. Hoge, 47 Wash., 663, 92 Pac., 433, 14 L. R. A. (N. S.), 216; 125 Am. St. Rep., 915; Hartley v. Miller (Mich.), 130 N. W., 336, 33 L. R. A. (N. S.), 81; Symington v. Sipes (Md.), 47 L. R. A. (N. S.), 662, 88 Atl., 134; Steffen v. McNaughton, 142 Wis., 49, 26 L. R. A. (N. S.), 382, 124 N. W., 1016, 19 Ann. Cas., 1227; McIntyre v. Orner, 166 Ind., 57, 4 L. R. A. (N. S.), 1130, 117 Am. St. Rep., 359, 76 N. E., 750, 8 A. & E. Ann. Cas., 1087; Danforth v. Fisher, 75 N. H., 111, 21 L. R. A. (N. S.), 93, 139 Am. St. Rep., 670, 71 Atl., 535.

The case is controlled, we think, by the general rules of law governing the relation of master and servant or principal and agent.

The universal test of the master's liability for the acts of his servant is, was there authority, express or implied, for doing the act; that is, was it one done in the course and within the scope of the servant's employment? If so, the master will be liable for the act, whether negligent, fraudulent, deceitful, or an act of positive malfeasance. However, the master is not liable for every wrong which the servant may commit during the continuance of the employment. The liability can only arise when the act done is within the real or apparent scope of the master's business. Hence, when a servant steps outside of his employment to do an act for himself not connected with his master's business no liability attaches. The reason for the rule is that beyond the scope of his employment a servant is as much a stranger to his master as a third person. In every such case the proper inquiry is, was the servant engaged in serving his master? If the act be done while the servant is at liberty from the service and pursuing his own ends exclusively, the master is not responsible. C., N. O. & T. P. Ry. Co. v. Rue, 142 Ky., 694; Sullivan v. L. & N., 115 Ky., 450; Morier v. St. Paul, M. & M. R. Co., 31 Minn., 351, 47 Am. Rep., 793, 17 N. W., 952. In the recent case of Lotz v. Hanlon, 217 Pa., 339, 118 Am. St. Rep., 922, 66 Atl., 525, 10 Ann. Cas., 731, 10 L. R. A. (N. S.), 202, the court said:

"It was essential to a recovery in this case that it be made to appear that the accident from which plaintiff's injury resulted occurred while the person in charge of the automobile was using it in the course of his employment, and on his master's business.   *   *   * But it comes to nothing that the driver was the defendant's servant, if it appears that at the time the accident happened he was not on the master's errand or business. If he were on an errand of his own, then as long as so engaged he did not stand in the relation of servant."

In this case the uncontradicted proof shows that the chauffeur, after taking Mrs. Tyler and the members of her family to the Wood residence, had performed all the service that he was then required or expected to perform. He had received general directions always to return to the garage after the performance of such service. It was then about two hours and a half until he was expected to return for the defendant's family. Instead of following the directions of the defendant and

returning to the garage he took the machine and set out on a journey that had no connection whatever with his master's business. After calling at Reimers' garage in the eastern part of the city, Gudgel suggested that he be taken to Third and Hill Streets. The chauffeur declined, but finally consented to do so if Gudgel would set up the drinks. They then left for Eiler's road house, which was about two imles distant from the Wood residence. After getting the drinks they started on their return journey. The entire trip was solely for the chauffeur's own pleasure and for the accommodation of his friend Gudgel. The facts show that the chauffeur had no authority, either express or implied, and the trip was not taken for the purpose of furthering the business of the defendant. It was an independent journey, exclusively his own. Under these circumstances the authorities uniformly hold that the master is not liable for negligence of the chauffeur. Thus in Colwell v. Aetna Bottle & Stopper Co., 33 R. I., 531, 82 Atl., 388, 2 N. C. C. A., 430, the chauffeur was directed by the owner to drive the automobile to a garage, but used the machine to take a co-employee home and to go for his supper. While doing so the machine collided with another automobile. In denying liability the court said:

"When he first arrived at the garage on Bradford street it was his duty, then, to take the automobile into the garage and wash it and put it up for the night. That was all that he was instructed or expected to do. He had no authority, either express or implied, to use the machine for the benefit of another employe, or for his own convenience in going to get his supper. His use of the automobile from the time he left the Bradford street garage and during the whole circuit that he made from that point to Potter's avenue, and from there to the restaurant on Westminster street, and from there back to the Bradford street garage, was unauthorized and beyond the scope of his employment."

In Steffen vs. McNaughton, *supra*, the accident happened while the defendant's chauffeur was alone in the automobile and was going to his home for dinner. Under his contract of employment the chauffeur was to provide himself with meals. He was using the machine without the knowledge of his employer. It was held that the relation of master and servant was suspended at the time to the extent that the master was not liable.

In Northrup v. Robinson, 33 R. I., 496, 82 Atl., 392, 2 N. C. C. A., 439, the facts are stated as follows:

"The plaintiff was thrown from his bicycle by a collision with an automobile owned by the defendant and operated by his chauffeur. The chauffeur started out that morning from the defendant's house to go to the post office and express office at Wakefield for his employer. After leaving the post office, instead of going to the express office or returning to the defendant's home, he started to deliver a note from the gardner who was employed on the defendant's premises, to the gardener's wife, who lived on another road beyond the post office, some distance from the route between the post office, the express office and defendant's home. At the time of the collision he was undertaking this errand with the automobile, without the knowledge or consent of the defendant, and solely to accommodate the gardener."

In holding that the trial court properly directed a verdict in favor of the defendant the court said:

"This act was not in furtherance of the defendant's business, and was not done under authority or permission, either express or implied. It was an independent journey, exclusively his own."

In the case of Fleischner v. Durgin, 207 Mass., 435, 33 L. R. A. (N. S.), 79, 93 N. E., 801, 20 Ann. Cas., 1291, the chauffeur was ordered to take the automobile from the garage to a shop less than a mile distant. Instead of doing so he drove to a point six miles away to get a chain for his own use. The court stated the rule as follows:

"The master is liable for the act of a servant in charge of his vehicle when the latter is acting in the main with the master's express or implied authority, upon his business, and in the course of the employment, for the purpose of doing the work for which he is engaged. The master is not liable if the servant has abandoned his obligations, and is doing something not in compliance with the express or implied authority given, and is not acting in pursuance of the general purpose of his occupation, or in connection with the doing of the master's work. Under this rule the employer has been held responsible for wrongs done to third persons by his driver during incidental departures from the scope of the authority conferred by the employment, and upon comparatively insignificant deviations from direct routes

of travel, but within the general penumbra of the duty for which he is engaged.''

In holding the master not liable, the court said:

''He (the chauffeur) was acting in disregard of his instructions, and wholly outside his employment, and for a purpose having no relation, even remote, to the business of the master. The extent of the excursion which he undertook on his own account was so disproportionate to the length of the route he was authorized to go that it cannot be minimized to a deviation.''

In the case of Danforth v. Fisher, *supra*, the facts and conclusions of the court are stated as follows:

''At 5 o'clock on the day of the accident, McCauley, who was employed by the defendant as a chauffeur, took the automobile from the place where it was kept, drove to the decedent's store, and awaited orders. He was told to get his supper and to be at the New City Hotel with the automobile at a quarter before 7 o'clock. After he had eaten supper, instead of taking the car to the hotel according to the defendant's order, he drove to West Manchester, a mile or two distant from his boarding place, and in an opposite direction from the hotel, for the purpose of calling upon a friend. At the time of the accident he had finished his call and was on his way to the hotel. Although the evidence shows that McCauley was the defendant's servant, and that he drove the automobile against the plaintiff's horse and caused the animal to run away, it also shows that he took the automobile without the defendant's permission and went with it on an errand of his own; that he was acting for himself, and not for the defendant, at that time. As it cannot be found from the evidence that McCauley was doing what he was employed to do at the time the plaintiff was injured, there was no error in the order of non-suit.''

In Siegel v. White Company, 81 Misc., 171, 142 N. Y. Supp., 318, it was held that an automobile company was not liable for an injury occasioned by an automobile being driven by an employee to whom it had been loaned for his personal use, on the ground that the employee was not at the time acting as the company's servant.

For further discussion of the question involved see the following:

Symington v. Sipes, *supra;* McCarty v. Timmins, 178 Mass., 378, 86 Am. St. Rep., 490, 59 N. E., 1038; Fiske v. Enders, 73 Conn., 338, 47 Atl., 681; Howe v. Leighton,

75 N. H., 601, 75 Arl., 102; Jones v. Hoge, *supra;* Slater v. Advance Thresher Co., 97 Minn., 305, 5 L. R. A. (N. S.), 598, 107 N. W., 133; Doran v. Thomsen, 76 N. J. L., 754, 19 L. R. A. (N. S.), 335, 131 Am. St. Rep., 677, 71 Atl., 296; Lewis v. Amorous, 3 Ga. App., 51, 59 S. E., 338; McIntire v. Hartfelder-Garbutt Co., 9 Ga. App., 327, 71 S. E., 492; Fielder v. Davison, 139 Ga., 509, 77 S. E., 618; McNeal v. McKain, 33 Okla., 449, 41 L. R. A. (N. S.), 779, 126 Pac., 742; Reynolds v. Buck, 127 Iowa, 601, 103 N. W., 946, 18 Am. Neg. Rep., 412; Daily v. Maxwell, 152 Mo. App., 415, 133 S. W., 351; Patterson v. Kates (C. C.), 152 Fed., 481; Quigley v. Thompson, 211 Pa., 107, 60 Atl., 506; Clark v. Buckmobile Co., 107 App. Div., 120, 94 N. Y. Supp., 771; Stewart v. Baruch, 103 App. Div., 577, 93 N. Y. Supp., 161; Douglass v. Hewson, 142 App. Div., 166, 127 N. Y. Supp., 220; Storey v. Ashton, L. R., 4 Q. B., 476, 38 L. J. Q. B. (N. S.), 223, 10 Best & S., 337, 17 Week. Rep., 727; Mitchell v. Grassweller, 13 C. B., 235, 22 L. J. C. P. (N. S.), 100, 17 Jur., 716, 1 Week. Rep., 153, 17 Eng. Rul. Cas., 252.

Plaintiff insists that the facts in this case bring it within the rule applied in Geraty v. National Ice Co., 44 N. Y. Supp., 659, and Jones v. Wiegand, 119 N. Y. Supp., 441. In the former case, the drivers of the defendant's ice wagon were sent to deliver a load of ice at the Grand Central Station in New York. They deviated from the direct route and stopped at Forty-third street and Third Avenue. The drivers stated that while there they stopped in a restaurant for breakfast and as they started back on their route a cake of ice slipped off their wagon, injuring a small child. One witness testified that they were unloading ice and while doing so their tongs slipped and a cake of ice fell on the child. Plaintiff's proof was that the wagon was negligently started with a jerk. In discussing the question of liability the court said:

"It is the rule, no doubt, that the master is not necessarily relieved from responsibility for an injury resulting from the negligence of his servant simply because the servant is at the time acting in disobedience to the master's order. The question in every case is whether the act he was doing was one in prosecution of his master's business. If the act was one which, continued until the termination, would have resulted in carrying out the object for which the servant had been employed, the master would be liable for whatever neg-

ligence might take place during its performance, although the servant in doing it, was not obeying the instructions of the master, or although he had deviated from the route prescribed by the master for the purpose of doing some act of his own, but yet with the intention, at the same time of pursuing his master's business. Quinn v. Power, 87 N. Y., 535, 539. The rule, as laid down by the latest cases in the English Courts, is that a master is responsible for an injury resulting from the negligence of his servant while driving his car, provided the servant is at the time engaged in his master's business, even though the accident happens in a place to which his master's business did not call him. But if the journey upon which the servant starts be wholly for his own purposes, and without the knowledge or consent of the master, the latter will not be liable. Mitchell v. Grassweller, 13 C. B., 237; Storey v. Ashton, L. R., 4 Q. B., 476. * * *

"We think that the defendant was not entitled to be relieved from liability if the accident happened after Sweeney had taken his place upon the wagon, and resumed his course towards the Grand Central Station and the accident was caused by the slipping of the ice from the wagon. At that time, Sweeney, whatever may have been his object in deviating from the direct route, was again proceeding to deliver the ice. He had accomplished whatever purpose he intended to accomplish by the deviation and had resumed the execution of the work which the defendant had intrusted him to do."

The facts in the case of Jones v. Wiegand, *supra,* are as follows:

The defendant's driver was sent with defendant's coach to an undertaker for use at a funeral. According to directions he called for some gentleman, took him to the funeral, then to the cemetery and back home. He had no further duty to perform except to return the carriage to the stable, a distance of sixteen blocks by the direct route. Instead of returning the carriage he went several blocks out of the way, part of the time in the opposite direction. In returning the coach to the stable he injured a little child. The court said:

"The test is whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions. If the servant for purposes of his own, departs from the line of his duty, so that for the time being his acts con-

stitute an abandonment of his service, the master is not liable; but, to constitute an abandonment of the service, the servant must be serving his own or some other person's purposes, wholly independent of his master's business. It seems to me that the making of the circuitous route to the stable was at most a deviation, not an abandonment of the service. While the servant deviated from the direct route, he was nevertheless engaged in taking the coach back to the stable. He combined his own with his master's purposes, but did not wholly abandon his service, except during the time when he was absent from the coach to make his call.

"But, if the foregoing be doubtful, it seems plain that, when the driver returned to the coach for the purpose of taking it back to the defendant's stable, he re-entered upon his master's service, and resumed the business which he had temporarily abandoned. It is no answer to this to say that the accident would not have happened if he had not made the call. His carelessness after he had resumed his master's business was the *causa causans* of the accident. The leading English cases (Joel v. Morrison, 6 Carr. & P., 501, and Sleath v. Wilson, 9 Carr. & P., 607) are illustrations of mere deviation from the line of duty, while Mitchell v. Grassweller, 13 C. B., 237, and Storey v. Ashton, L. R. & Q. B., 476, were held to be cases of a total abandonment of the service. The cases cited by the respondent are not in point, and it is necessary to note only one or two of them. In Cunningham v. Castle, 127 App. Div., 580, 11 N. Y. Supp., 1057, the defendant's evidence tended to show that the defendant had loaned the automobile to his chauffeur, and that the accident happened while the latter was using it solely for his own purposes. Sheridan v. Grassweller, *supra.* The evidence in that case tended to show, not deviation merely, but an entire abandonment or departure from the master's business. The coachman was not returning the horses and carriage to the stable, even by a circuitous route, but was using them for purposes of his own. The Massachusetts cases may seem to support the defendant's contention. See McCarthy v. Timmons, 178 Mass., 378, 59 N. E., 1038, 86 Am. St. Rep., 490; Perlstein v. American Express Co., 177 Mass., 530, 59 N. E., 194, 52 L. R. A., 959."

It will be observed that in both of the above cases the court based the liability of the master on the ground that the servant was actually engaged in doing the

master's work, and after temporarily abandoning his work for purposes of his own resumed the performance of the master's business. In each of the opinions the distinction between a case where the servant is actually engaged in the master's business, but temporarily abandons it for purposes of his own and then resumes the service of the master, and a case where the entire journey has no connection with the master's business but is undertaken by the servant for his own exclusive purposes, is clearly pointed out. Thus, in the Geraty case the court said:

"But if the journey upon which the servant starts be wholly for his own purposes, and without the knowledge or consent of the master, the latter will not be liable."

In the Jones v. Wiegand case the court said:

"If the servant, for purposes of his own, departs from the line of his duty, so that for the time being his acts constitute an abandonment of his service, the master is not liable; but to constitute an abandonment of the service, the servant must be serving his own or some other person's purposes, wholly independent of his master's business."

In the case under consideration, the chauffeur had no duties to perform for the owner until the hour of twelve o'clock p. m. approached. There was a period of about two hours and a half during which time he was at liberty from the service. While thus at liberty he set out on a journey exclusively his own and having no connection with his master's business. The case is not one where the journey, if continued until its termination, would have resulted in carrying out the object for which the chauffeur had been employed. It is not a case of mere deviation from the established route or of temporary departure from duty. It is a case where the servant was at liberty and was serving his own purposes wholly independent of his master's business. It will not do to say, therefore, that although the chauffeur had undertaken the journey exclusively for his own purposes, the mere fact that he had turned the automobile around and was coming back into the city with the ultimate intention of returning to the Wood residence for the defendant and her family, shows a resumption of the master's business. It was then only eleven o'clock. He had no duties to perform for the defendant until about twelve o'clock. Under his arrangement with Gud-

gel the chauffeur had agreed to take the former to Third and Hill Streets. He was actually bound for that point when the accident happened. The place of the accident was almost two miles from the Wood residence. Incidently, the return trip would bring him nearer to the Wood residence. His intention to go to the Wood residence after complying with his agreement to take Gudgel to Third and Hill Streets was merely incidental to the return journey and not the real purpose thereof. It was still his own journey, undertaken exclusively for his own purposes and for the accommodation of Gudgel. He was not, therefore, engaged in the master's work at the time the accident occurred. It follows that the trial court should have directed a verdict in favor of the defendant.

Judgment reversed and cause remanded for a new trial consistent with this opinion.