[No. 24182. Department One. January 4, 1933.]

CHARLES H. ENNIS, *as Guardian ad Litem for Irene Burkmar, a Minor, Respondent,* v. H. A. SMITH *et al., Appellants.*[1]

[1]Reported in 18 P. (2d) 1.

*McCarthy & Edge* and *W. E. DuPuis,* for appellants.

*Robertson & Smith,* for respondent.

MILLARD, J.—While standing on a sidewalk in the city of Spokane, Irene Burkmar, a minor, was struck by a runaway Ford truck owned by defendant B. E. Pritchett, an employee of defendant H. A. Smith. By a guardian ad litem, an action was instituted to recover for the personal injuries sustained by the minor. The trial of the cause resulted in a verdict in favor of the plaintiff. The defendants have appealed from the judgment on the verdict.

The undisputed facts are as follows: Appellant Smith was engaged in the electrical business in Spokane. That business necessitated response to calls at all hours for the installation and repair of electrical equipment within the city. He maintained a central office, storeroom and shop in which he kept materials and equipment. When called upon to perform any electrical work he sent one of his employees with the equipment essential to the performance of such work. Pritchett was one of Smith's employees. He received compensation for the time actually spent on any job to which he was assigned; that is, he was paid for the time actually consumed in doing the work. Pritchett and the other employees were paid $1.12 an hour for work performed between eight a. m. and five p. m.; time and one-half for labor between five p. m. and ten p. m.; and double time for work performed between ten p. m. and eight a. m.

Pritchett owned an old Ford truck, which was without a gear shift and had no brakes. That truck was used by Pritchett to carry materials and equipment to any job to which he was assigned. Smith paid to Pritchett seven cents a mile for each mile traveled by the truck when so used. No compensation for the use of the car was allowed to Pritchett while he was traveling from his home to the shop or from the shop to his home. Pritchett's employment was such—work was slack—that he could accept employment from other contractors.

On August 1, 1930, Pritchett worked about three hours at Smith's shop in the forenoon. He spent most of the day repairing his Ford, which stood near the shop. He did not use the car that day on any job for Smith. There was no material taken away from the shop that day by Pritchett. At five p. m., Pritchett drove away from the shop to a service station, where he purchased five gallons of gasoline. He then drove down in front of his apartment, parked the car on Washington street, facing north, with the right wheel against the curb, and went into his apartment. He ate dinner, bathed, and prepared for a week-end trip into the country planned by him and Mrs. Pritchett the day before. Between five-twenty and five-thirty p. m., the Ford started, unattended, across an intersecting street, ran upon the sidewalk and injured Irene Burkmar. About six-thirty p. m., Pritchett went out in front of his apartment. His car was missing. He noticed it down the street where the accident occurred. He went to the scene of that accident, and at this point, two witnesses testified that Pritchett made certain admissions or declarations. Pritchett denied making the admissions.

Two witnesses, Grecol and Miss Burkmar's brother, testified that they were engaged in examining the Ford

when Pritchett appeared; that Pritchett was informed by them of the serious accident which had occurred; that Pritchett stated that this was the first he had heard of the accident; that he did not know anything about it, and that "he was going to go back to work, to take his tools or supplies". Three witnesses testified that within the truck at the time of the accident were electric materials, consisting of coils of wire and insulators ordinarily used in electrical work, and a kit of tools. Pritchett explained that he had in the truck some scraps of wire and some unused insulators in an aperture between the bed of the truck and the seat in front; that these materials were left over from some work he had done at Colville before going to work for Smith, in whose employ he had been for not more than a week.

Counsel for appellants concede the verdict of the jury concludes the question of the negligence of Pritchett, as to whose liability no question is raised. It is contended, however, that the court erred in refusing to grant, as to appellants Smith, the motion for judgment notwithstanding the verdict. Counsel insist that, other than the testimony of two witnesses as to admissions of Pritchett, there was no evidence that Pritchett was Smith's agent; therefore, in the absence of evidence, or reasonable inference from evidence, that Pritchett was Smith's agent, the testimony of the two witnesses as to Pritchett's admissions was inadmissible.

The position of the appellants is well taken. We are committed to the rule that the mere declarations of an alleged agent, made out of court, are not competent testimony to establish the fact of his agency: that, where there is no evidence from which the fact of agency may be inferred, the declarations of

the agent as to facts tending to establish the agency, even when made as a part of the *res gestae,* are inadmissible.

In *Anning v. Rothschild & Co.,* 130 Wash. 232, 226 Pac. 1013, we said:

"We have long held that the declarations of the alleged agent are not competent to establish the fact of agency. *Comegys v. American Lumber Co.,* 8 Wash. 661, 36 Pac. 1087; *Western Security Co. v. Douglass,* 14 Wash. 215, 44 Pac. 257; *Gregory v. Loose,* 19 Wash. 599, 54 Pac. 33. In the first mentioned case it was said:

" 'In no event are the mere declarations or admissions of an alleged agent, made out of court, competent testimony to establish the fact of his agency. No one can clothe himself with power to represent another or to bind him by his acts or declarations. An agent is but the creature of his principal and derives all of his power as such from his principal, and an agency can only be established by showing some admission, act or declaration of the alleged principal. But the fact of the agency being once established by proper evidence, then the acts and declarations of the agent done or made within the scope of his agency, and while employed in or about the business of his principal, are binding upon the principal, for the reason that the acts and declarations of the agent are then deemed to be the acts and declarations of the principal himself. But this principle cannot apply to declarations which merely go to show the existence of the agency.'

"This disclosure of the reason for the rule is a complete answer to any argument to the effect that it may be violated under the rule of *res gestae.* Clearly, if the supposed agent may not bind his principal until there be other evidence of the agency, in no event and under no conditions can a litigant be prejudiced by the introduction of the admissions of a third person until there be evidence of the authority of such person to bind him. It is well settled that the *res gestae* rule does not override the general rule."

■ There are no facts creating a presumption that Pritchett was using the automobile in the service of Smith at the time he parked his automobile just prior to the accident. The inference may not be reasonably drawn from the facts in this case that Pritchett, who owned the truck and was privileged to use it as he pleased, and was not required to use it for his principal except when on a job to which he had been assigned, was acting within the scope of his employment. The undisputed evidence is that he was not then employed by, nor was he in any way acting for, Smith.

There is no evidence (other than the testimony as to the admissions, which testimony is not admissible under the rule cited) that Pritchett contemplated returning to the shop that evening. There is not a fact from which it may be reasonably inferred that Pritchett was going from, returning to, or in the course of, his employment when the accident occurred. Quite the contrary. He was in pursuit of his own personal pleasures, preparing for a trip to the country; hence Smith is not liable for Pritchett's negligence.

"It is well settled by all authorities that the act complained of must have been done while the servant was engaged in doing some act under authority from his master; not that, while engaged in the act, he is employed in the master's business, but the act must have been in the furtherance of the master's business and such as may be fairly said to have been so expressly or impliedly authorized by the master." *Babbitt v. Seattle School District*, 100 Wash. 392, 170 Pac. 1020.

In *Carroll v. Western Union Tel. Co.*, 170 Wash. 600, 17 P. (2d) 49, a messenger employed by the defendant was granted permission by his employer to leave his duties to take his motorcycle to a repair shop. No deduction was made from the boy's pay on account of the time lost from his regular duties to make the

trip.   The boy was required to own a motorcycle to perform his duties as a messenger.   On returning to the telegraph office, the boy negligently collided with a pedestrian, in whose favor a jury rendered a verdict in an action brought against the telegraph company. Motion for judgment notwithstanding the verdict was granted, and on appeal the judgment was affirmed. We said:

"Among the cases which lend support to our present views is *Tyler v. Stephan's Administratrix*, 163 Ky. 770, 174 S. W. 790, which cites with approval our own case of *Jones v. Hoge*, 47 Wash. 663, 92 Pac. 433, 14 L. R. A. (N. S.) 216, 125 Am. St. 915.  The *Jones* case early established the rule, from which we have never departed, that even the owner of an automobile, whose servant takes it without his knowledge or authority and uses it for his own personal ends, is not to be held liable for injury caused by the servant's acts, because the servant's acts are beyond and outside the scope of his employment. This case, where the servant owned the vehicle and was privileged to use it as he pleased, save only as he was required to use it in his master's service, presents, we think, a stronger combination of facts leading to the conclusion that reasonable minds ought not to differ in drawing the inference that he was not within the scope of his employment during the period when he was excused by the master from his duties."

We have examined all of the authorities cited, and find they are either distinguishable on the facts from the instant case, or not out of harmony therewith.

The judgment is reversed, and the cause remanded with directions to dismiss the action as to appellants Smith.

TOLMAN, C. J., PARKER, MITCHELL, and HOLCOMB, JJ., concur.