KELLAS, J.
Frank Lambe was convicted by the court, sitting without a jury, of having violated section 1263 of the Agricultural Code of the State of California, under a complaint charging him in two counts with violation thereof as follows. Count One:
“The said defendant, on or about the 9th day of December, 1952 at and in the said County of Fresno, State of California, did act as an agent in the purchasing of farm products, from Randall Lutze, to-wit: turkeys; without first obtaining an agent’s license as provided by Section 1263 of Agricultural Code of State of California.”
Count Two is couched in exactly the same language except the alleged offense involves a different party at a different date.
Appellant contends :
1. That there is no competent evidence showing that at the time of the alleged offenses defendant was an agent as that term is employed in section 1263 of the Agricultural Code.
2. That it was error for the trial court to receive in evidence the extrajudicial statements of the defendant, both oral and written, for the purpose of establishing his status as an agent.
We will consider the last point first.
The law in regard to the admissibility of extrajudicial statements or admissions of an alleged agent is accurately stated by appellant in his opening brief. Agency cannot be established by such offered evidence. Quoting from the case of Scott v. Los Angeles Mountain Park Co., 92 Cal.App. 258 [267 P. 914], the court said in the case of Whiteside v. United Theatres, 106 Cal.App.2d 471, 472 at 477 [235 P.2d 261]:
“ ‘. . . That the witness Lloyd might have been placed upon the witness stand and asked as to all the facts tending to show his authorization to act as an agent for the defendant is really what is supported by the rule just stated, and not what he may have told somebody in relation thereto. This action being between the plaintiffs and the defendant, the witness Lloyd could have testified directly as to his agency by stating whatever there was, if anything, tending to show his appointment or authorization to act as agent, but to put a witness on the stand to testify to what she had heard Mr. Lloyd state or what representations he had made was an entirely different matter and not in anywise supported by the authorities cited, but absolutely contrary thereto. ’ ”;
The court going on to say: “As hereinbefore pointed out, the agency of Lytle cannot be proved in this manner . .
*879 That the statements or admissions are made in writing does not alter the rule. (Champlin Refining Co. v. Gasoline Products Co., 29 F.2d 331 at 336.)
Even though the admission be admissible as part of the res gestae, it would not serve to establish the fact of agency. (Stouffer-Bowman, Inc. v. Webber, 18 Wn.2d 416 [139 P.2d 717 at 722]);
“In Ennis v. Smith, 171 Wash. 126, 18 P.2d 1, 2, we stated: ‘We are committed to the rule that the mere declarations of an alleged agent, made out of court, are not competent testimony to establish the fact of his agency; that where there is no evidence from which the fact of agency may be inferred, the declarations of the agent as to facts tending to establish the agency, even when made as a part of the res gestae, are inadmissible. ’ ”
This ease was tried by the respondent upon the theory that the defendant Lambe was the agent of one Ralph Smith.
“Mr. Evans : The testimony he is about to give will indicate motive, scheme and design on the part of the Defendant, Frank Lambe, in the purchase of Turkeys pursuant to him acting as an agent for one Ralph Smith.” (Reporter’s Transcript, page 34, lines 7 to 10, inclusive.)
“Mb. Evans : ... We are trying Mr. Lambe for acting as an agent for Mr. Smith.” (Reporter’s Transcript, page 47, lines 14 and 15.)
For an agent to exist, there must be a principal. We have searched the record in vain to find any competent evidence to establish a principal for the defendant, whether it be Mr. Smith or someone else, except by the extrajudicial statements of the defendant and some hearsay testimony which was permitted to come in over defendant’s persistent objections. The court was apparently of the opinion that the written statements of the defendant (People’s Exhibits 1 and 2), solely by reason of the fact that they were in writing, took such offered evidence out of the rule above quoted and were admissible for the purpose of making out a prima facie case.
“The Court: There is a definite distinction between the conversation and a writing, in this particular act that you are talking about can’t be proved by the extrajudicial statements.” (Reporter’s Transcript, page 8, lines 23 to 25, inclusive.)
“The Court : Yes. Well, the Court already ruled that there is prima facie evidence that because of this exhibit that *880 Ralph Smith sold . . . let’s see. Ralph Smith purchased birds from Lutze. There is a written statement to that effect. As long as there is a prima facie showing has been made, I can’t see where your objection is good.” (Reporter’s Transcript, page 17, lines 21 to 26, inclusive.)
The court, however, received the evidence subject to motion to strike.
“The Court.- In order to continue this trial without too much interruption the court will take judicial notice of the Jaw as to admissions made by a party setting up an agency, and I will allow the testimony in evidence subject to a motion to strike in the event that the law reads that a written statement is also considered as a statement under this particular law which would exclude such evidence in court. So with that in mind we will continue on this particular case.” (Reporter’s Transcript, page 18, lines 15 to 22, inclusive.)
Defendant’s several motions to strike such testimony apparently were never ruled upon and the evidence remains in the record. The objections were good and the motions to strike should have been granted. The error is prejudicial to the defendant and requires a reversal of the judgment of conviction.
A further question has been raised by appellant which we believe deserves comment. He contends that the transactions complained of fall within the exception of section 1262 of the Agricultural Code of the State of California. This section provides as follows:
“Sec. 1262. Exemptions from chapter. This chapter does not apply to or include:
“(b) (Processors.) Any person or exchange buying, receiving, or otherwise handling farm products as a processor, as that term is defined in Chapter 9, Division 6, of this code.” Respondent showed that Mr. Smith, the alleged principal, was, in fact, a processor. Mr. Kachadorian, a District Supervisor, Bureau of Marketing Enforcement, Department of Agriculture of the State of California, called as a witness for the People, testified as follows:
“Q. Mr. Smith is a processor? A. Mr. Smith is an individual, he is licensed as a processor.
“Q. I see. And this Mr. Leusehner he is a processor too? A. He is licensed as a processor too also, that is Yosemite Creek Company is licensed as a processor.
*881 “Q. Yosemite Creek Company is licensed as a processor, that is what their business is as far as you know, is that right ? A. Yes.” (Reporter’s Transcript, page 43, lines 13 to 20, inclusive.)
Mr. Smith, called as a witness by the defense although he had been subpoenaed by the People and not called by the People, testified as follows:
“Q. And what is your business or occupation ? A. Rancher, processor.
“Q. And by processor you mean a licensed processor under the Agricultural Code of the State of California ? A. Yes, poultry.” (Reporter’s Transcript, page 45, lines 12 to 16, inclusive.)
And the witness, Randall Lutze, one of the alleged victims called as a witness for the People, testified' as follows:
“The Witness : He is a processor sure.
“Mb. Quinlisk: Q. Mr. Smith is the processor ? A. Sure.” (Reporter’s Transcript, page 21, lines 24. and 25, inclusive.)
Harry Collett, the other alleged victim, called as a witness for the People, testified as follows :
“Q. Now on this document, Mr. Collett that you have identified here, the names appearing on the top thereof, to your knowledge they are all processors of turkeys? A. Yes, sir. I was up to the plant there afterward, and seen the plant.
“Q. They take the birds in and they—— A. Kill them and dress them and oven-ready them and put them in boxes and quick freeze them, pack them and ship them.” (Reporter’s Transcript, page 30, lines 19 to 26, inclusive.)
The record also discloses that some of the poultry involved, particularly that of Mr. Collett, was, in fact, ultimately handled by parties other than the defendant. Appellant was prevented from eliciting such facts from the witness, Lutze.
It will be borne in mind that the defendant is charged under section 1263, which is a part of chapter 6 of division 6 of the Agricultural Code, and that being charged as an agent, he necessarily is charged with having acted as an agent of a “commission merchant, dealer, broker or cash buyer.” Such is the definition given under section 1263, subdivision (b), and section 1261, subdivision (i) , of the AgTicultural Code. It would, therefore, appear that any evidence received and appearing in the record relative to whether or not the transactions *882 concerned processing would be material only to show that the transactions fell within the above exception of section 1262 and could not be treated as proof of another possible offense with which the defendant was not charged.
With the objectionable evidence removed from the record, there does not appear to be sufficient evidence remaining therein to support the judgment. It is, therefore, the order of this court that the judgment of conviction of the defendant be, and the same is reversed.
Shepard, P. J., and Conley, J., concurred.