UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

PETER J. MEYER; SHAREE MEYER, husband and wife,

Plaintiffs-Appellants,

v.

NORTHWEST TRUSTEE SERVICES INC., a Washington Corporation,

Defendant-Appellee.

No.    15-35560

DC No. 2:14 cv-0297RSM
WD Wash., Seattle

ORDER

Before:    TASHIMA and NGUYEN, Circuit Judges, and WALTER,* District Judge.

The Memorandum Disposition filed on August 29, 2017, is withdrawn and replaced by the Memorandum Disposition filed concurrently with this order. With the filing of the revised Memorandum Disposition, the petition for rehearing en banc is denied as moot. Further petitions for panel and/or en banc rehearing may be filed with respect to the newly-filed revised Memorandum Disposition.

_____

*    The Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| PETER J. MEYER; SHAREE MEYER, husband and wife, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> NORTHWEST TRUSTEE SERVICES INC., a Washington Corporation, <br><br> Defendant-Appellee. | No.    15-35560 <br><br> DC No. 2:14 cv-0297 RSM <br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, Chief District Judge, Presiding

Argued and Submitted July 11, 2017
Seattle, Washington

Before:    TASHIMA and NGUYEN, Circuit Judges, and WALTER,[**] District Judge.

Plaintiffs-Appellants Peter and Sharee Meyer (together, the "Meyers") sued

Defendant-Appellee Northwest Trustee Services, Inc. ("NWTS") after the latter

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

initiated non-judicial foreclosure proceedings on their deed of trust. Following a bench trial, the bankruptcy court ruled that NWTS had violated the Washington Deed of Trust Act and, in doing so, also violated the Consumer Protection Act. It awarded the Meyers substantial damages and attorney's fees. NWTS appealed to the district court, which reversed the bankruptcy court. The Meyers now appeal from the judgment of the district court.

We have jurisdiction under 28 U.S.C. § 158(d)(1). We affirm the district court for the reasons stated in the district court's Order Reversing Bankruptcy Court, filed April 10, 2015, which is attached as Appendix "A" to this Memorandum.

**AFFIRMED.**

# APPENDIX "A"

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PETER J. MEYER AND SHAREE L.
MEYER, husband and wife;

        Appellee,

  v.

U.S. BANK NATIONAL ASSOCIATION AS
TRUSTEE FOR STRUCTURED ASSET
SECURITIES CORPORATION MORTGAGE
PASS-THROUGH CERTIFICATES, 2006-
GE1, a federally chartered national bank;
AMERICA'S SERVICING COMPANY, a
Division of WELLS FARGO NA d/b/a WELLS
FARGO HOME MORTGAGE,   a National
Bank; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC., a
Delaware corporation; and DOE
DEFENDANTS 1-10,

        Defendants,
   and

NORTHWEST TRUSTEE SERVICES, INC.,

Appellant
        Defendants.

| |
|---|
| Case No. 14-00297RSM |
| USBC, WAWB 14-S002 |
| BK No. 12-01630-KAO |
| ORDER REVERSING BANKRUPTCY COURT |

ORDER REVERSING BANKRUPTCY COURT - 1

This matter comes before the Court upon appeal by Defendant-Appellant Northwest Trustee Services, Inc. ("NWTS") from the Bankruptcy Court for the Western District of Washington's memorandum decision granting judgment in favor of Plaintiffs-Appellees Peter and Sharee Meyer (the "Meyers"). Following bench trial, the Honorable Karen Overstreet awarded the Meyers $72,008 plus costs and attorney's fees on their claims against NWTS for violation of Washington's Deed of Trust Act and Consumer Protection Act. Having considered the briefs and supporting exhibits of the parties and amicus curiae United Trustees Association ("UTA"), together with the relevant record below, and having heard oral argument by the parties, the Court REVERSES the Bankruptcy Court's judgment for the reasons stated herein.

## FACTUAL BACKGROUND

On November 10, 2005, the Meyers executed an adjustable rate promissory note (the "Note") in favor of Finance America LLC to secure a $425,000 loan. Bankruptcy Record, Case No. 12-01630KAO ("BR"), Dkt. # 1, Ex. A. The Note was secured by a Deed of Trust (the "Deed") against the Meyers' residential property in Snohomish, WA. *Id.* at Ex. B. The Deed named Ocwen Loan Servicing as servicer, DCBL, Inc. as trustee, Finance America LLC as lender, and Mortgage Electronic Registration Systems ("MERS") as beneficiary and nominee of the lender. The Deed provided that the Note, together with the Deed, could be sold one or more times without notice to the borrowers. *Id.* at ¶ 20. The Deed was recorded on November 18, 2005, and the Meyers moved into their residence in January 2006 with their three children and began making payments under the Note. Memorandum Decision, Dkt. # 145 ("MD"), p. 3.

In April 2006, the Note was transferred into a securitized trust, entitled Structured Asset Securities Corporation Mortgage Pass-Through Certificates Series 2006-GELS2 ("GEL2"). MD

ORDER REVERSING BANKRUPTCY COURT - 2

at p. 3. The relevant details of this transaction include the following: First GEL2 is not an operating entity and therefore lacks a physical address. Second, U.S. Bank National Association ("U.S. Bank") served as Trustee of the trust, with America's Servicing Company ("ASC"), a division of Wells Fargo Bank NA ("Wells Fargo"), acting as the loan servicer. The trial court determined based upon a review of the evidence, that Wells Fargo held the Note as custodian for U.S. Bank, which in turn served as Trustee for GEL2. MD at p. 5. Third, under the trust agreement, U.S. Bank was authorized to execute powers of attorney in favor of any servicer to permit the servicer to foreclose against any mortgaged property in GEL2, with actions in pursuit of foreclosure delegated to the servicer under a Servicing Agreement. NWTS produced three separate Limited Power of Attorney documents executed by U.S. Bank authorizing Wells Fargo to act as its attorney-in-fact under the Servicing Agreement. MD at p. 26; Defendant-Appellant's Appendix ("DA"), Dkt. # 12, pp. 61-66.

The Meyers continued to make the required payments of principal and interest under the Note until they began to experience financial difficulties toward the end of 2008. Under the terms of the Note, the Meyers agreed that failure to pay the full amount of each monthly payment on the due date would put them in default. BR, Dkt. # 1, Ex. A, ¶ 7(B). The trial court could not determine from the evidence presented at trial precisely when the Meyers initially defaulted or whether any lender issued a formal notice of default. MD at p. 6.

On March 9, 2009, NWTS received its first referral to foreclose the Deed of Trust in the form of a "Case Information Report" ("CIR") pulled from the third party website "Vendorscape." MD at p. 6. According to Jeff Stenman, Foreclosure Manager for NWTS, NWTS has used Vendorscape to access foreclosure information for at least a decade but has no procedures in place

to verify the accuracy of the information. *Id.* Based on the information in the CIR, Stenman executed an Assignment of Deed of Trust from MERS to U.S. Bank as Trustee for GEL2 on March 10, 2009. Although Stenman was an employee of NWTS, he prepared and signed the assignment as a Vice President of MERS pursuant to what he described as a tri-party agreement between himself, Wells Fargo, and MERS. *Id.* at p. 7. The agreement was not produced at trial, though the Assignment was recorded on July 1, 2009. *Id.*

On March 26, 2009, Anne Neely signed an appointment of NWTS as Successor Trustee. DA at p. 72. The document identified Neely as a Vice President of Wells Fargo, acting as attorney-in-fact for U.S. Bank, Trustee for GEL2. *Id.* The assignment was recorded July 1, 2009, and incorrectly identified MERS as beneficiary, although MERS' interest had already been assigned to U.S. Bank at the time. *Id.*

For undisclosed reasons, the 2009 foreclosure proceeding against the Meyers was discontinued and a new proceeding initiated in 2010, following NWTS's receipt of a second CIR from Vendorscape requesting commencement of foreclosure. MD at p. 8; DA at p. 277. Both the 2009 and 2010 CIRs incorrectly referenced the Note as non-adjustable and contained conflicting representations of the principal balance and interest rate. MD at p. 8. NWTS nonetheless issued a Notice of Default under the Meyers' Deed of Trust on July 9, 2010 based on information contained in the 2010 CIR. DA at pp. 73-75. The Notice, which was taped to the Meyers' door, stated that they would need to pay $82,035.65 in order to avoid foreclosure. *Id.*; MD at p. 11. Paragraph (K) of the Notice provided the following contact details in accordance with RCW 61.24.030(8)(l):

(K) Contact Information for Beneficiary (Note Owner) and Loan Servicer

The beneficiary of the deed of trust is US Bank National Association, as Trustee for [GEL2], whose address and telephone number are:

ORDER REVERSING BANKRUPTCY COURT - 4

> c/o America's Servicing Company
> MAC X7801-02T, 3476 Stateview Blvd
> Fort Mill, SC 29715
> 855-248-5719
>
> The loan servicer for this loan is America's Servicing Company, whose address and telephone number are:
>
> MAC X7801-02T, 3476 Stateview Blvd
> Fort Mill, SC 29715
> 800-662-5014

DA at pp. 74-75. The Notice also identifies U.S. Bank, as Trustee for GEL2, as the "creditor to whom the debt is owed" and refers to NWTS as the "authorized agent" for U.S. Bank. *Id.* at p. 75.

In connection with the Notice of Default, NWTS provided a Foreclosure Loss Mitigation Form and Beneficiary Declaration, pursuant to RCW 61.24, each dated June 24, 2010. DA at p. 76; MD at p. 9. Both were signed under penalty of perjury by John Kennerty, though on the former he was identified as "VP of Loan Documentation" for ASC, while on the latter he was identified as "VP of Loan Documentation" for Wells Fargo as attorney-in-fact for U.S. Bank. *Id.* The Beneficiary Declaration identifies U.S. Bank, as trustee for GEL2, as the holder of the Note. DA at p. 76. Over NWTS's objection, the trial court admitted deposition testimony of Kennerty from a separate proceeding involving NWTS, *Geline v. NWTS, et al.*, King Count Sup. Ct. Case No. 09-2-46576-2, in which Kennerty testified that he routinely signed such documents without personal knowledge of any factual statements therein. MD at p. 10. The trial court determined that no one at NWTS took any action to verify any information provided in the Notice of Default or referenced in the declarations. *Id.*

Believing the interest rate and monthly payments stated on the Notice to be inaccurate, Mr. Meyer contacted the phone number for ACS but was unable to resolve his concerns. MD at p. 11.

ORDER REVERSING BANKRUPTCY COURT - 5

The Meyers accordingly hired attorney Richard Jones to represent them in July 2010 in their mortgage-related dealings. *Id.* at pp. 11-12. On December 17, 2010, the Meyers, through Jones, issued a Qualified Written Request ("QWR") under the Truth in Lending Act to ASC to determine the holder and owner of the Note. DA at pp. 138-159. On January 12, 2011, ASC responded by letter informing the Meyers that their loan was in a "pool" managed by U.S. Bank and provided a contact address for U.S. Bank. MD at p. 12.

On August 13, 2010, NWTS executed a Notice of Trustee's sale, reciting a sale date of November 19, 2010. DA at pp. 77-80. One day before the scheduled trustee's sale of their residence, the Meyers filed a Chapter 13 bankruptcy plan through separate retained counsel, Larry Feinstein. DA at pp. 81-126. On December 21, 2010, U.S. Bank, as trustee for GEL2, filed a proof of claim listing the total amount due under the loan as $502,190.76, with delinquent monthly payments from February 1, 2009 to November 1, 2010 and other costs totaling $86,020.02. *Id.* at pp. 127-28. The Meyers' first proposed a Chapter 13 plan that provided only for payments of $2,000 a month on their mortgage, which U.S. Bank opposed.

The dispute was resolved by the Meyers agreeing to give up their residential property in satisfaction of their debt. On June 1, 2011, the Meyers stipulated that U.S. Bank could have relief from the automatic stay, and the Meyers amended their plan to remove the U.S. Bank loan. *Id.* at pp. 129-36. On August 19, 2011, Judge Overstreet confirmed a plan without the subject mortgage. *Id.* at p. 137. On June 29, 2011, NWTS restarted the foreclosure process with issuance of an Amended Notice of Trustee's Sale, reciting a sale date of August 12, 2011. MD at p. 13. The Meyers subsequently sought mediation under the Foreclosure Fairness Act, RCW 61.24.163, and

ORDER REVERSING BANKRUPTCY COURT - 6

participated in three mediation sessions that included a Wells Fargo representative. DA at pp. 163, 223-24.

## PROCEDURAL BACKGROUND

The Meyers commenced this adversary proceeding on July 23, 2012, seeking a temporary restraining order enjoining the scheduled foreclosure sale. The bankruptcy court entered the TRO on August 2, 2012. BR at Dkt. # 16. Upon non-opposition by Defendants U.S. Bank and ASC, the court entered a preliminary injunction on August 20, 2012, requiring the Meyers to continue making monthly payments of $3,616.03 into the court registry. *Id.* at Dkt. # 20. Upon the Meyers' failure to respond to discovery requests and to make the requirement payments, the bankruptcy court subsequently dissolved the injunction, dismissed all claims against U.S. Bank, Wells Fargo, and MERS as a discovery sanction, and ordered that the trustee's sale could be reset. *Id.* at Dkt. ## 90, 91. Although the residence had not been sold when the case proceeded to bench trial against NWTS, the Meyers decided to move into a rental house in July 2013. MD at p. 15. Mr. Meyers testified that this decision was motivated by the stress of impending foreclosure.

On October 8, 2013, the case proceeded to bench trial against NWTS on claims for violation of the Washington Deed of Trust Act, RCW 61.24 *et seq.* ("DTA"), the Washington Consumer Protection Act, RCW 19.86 *et seq.* ("CPA"), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). On February 18, 2014, Judge Overstreet issued a memorandum decision, finding in favor of Plaintiffs on their DTA and CPA claims but denying them relief under the FDCPA. The Court therein awarded damages to the Meyers of $48,504, comprising actual damages of $23,504, plus CPA treble damages of $25,000. *See* MD. Actual damages included Jones's fees related to filing the QWR, Feinstein's fees related to filing the Chapter 13 bankruptcy,

ORDER REVERSING BANKRUPTCY COURT - 7

monthly rent from July 2013 through trial, as well as security and pet deposit for the Meyers' rental home, moving expenses, and lost wages attributable to the Meyers' attendance at mediations and hearings. On March 26, 2015, the court also awarded the Meyers attorney's fees of $30,324 and costs of $294.40, pursuant to RCW 19.86. BR, Dkt. # 169.

The bankruptcy court issued its final order and judgment on April 8, 2014. The instant appeal by NWTS followed, with the briefing schedule renoted on several occasions at the request of the parties and permission granted to UTA to participate in the appeal as amicus curiae.

## STANDARD OF REVIEW

The district court, acting in its appellate capacity, reviews the bankruptcy court's legal conclusion *de novo* and its factual determinations for clear error. *In re Olshan*, 356 P.3d 1078, 1083 (9th Cir. 2004). Mixed questions of law and fact are reviewed *de novo*. *Banks v. Gills Distributions Centers, Inc.*, 263 F.3d 862, 867 (9th Cir. 2001).

## ANALYSIS

### A. Judicial Estoppel

Although Judge Overstreet did not address the application of judicial estoppel in her memorandum decision, NWTS urges the Court to find that the Meyers are judicially estopped from asserting their claims against NWTS because they failed to list these claims as assets in their bankruptcy schedule. The Meyers contend that judicial estoppel should not apply because: 1) the argument was not raised or considered at trial, 2) their claims against NWTS were not known or cognizable in July 2010 when they filed for Chapter 13 relief, and 3) NWTS concealed actions that now give rise to the Meyers' claims.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage

ORDER REVERSING BANKRUPTCY COURT - 8

by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). Under both federal and Washington law, three factors inform the court's decision whether to apply the doctrine to a particular case. First, a party's later position must be "clearly inconsistent" with its earlier position. Second, the party must have succeeded in persuading a court to accept its earlier position, such that judicial acceptance of a later inconsistent position would suggest that either the first or second court was being misled. And third, the party seeking to assert a later inconsistent position must derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.*; *Arkison v. Ethan Allen, Inc.*, 160 Wash.2d 5345, 538, 160 P.3d 13 (2007). Judicial estoppel applies to preclude a debtor from pursuing claims when he "has knowledge of enough facts to know that a potential cause of action exists during the pendency of [a] bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Hamilton*, 270 F.3d at 784.

As a threshold question, this Court must determine whether the judicial estoppel argument was properly before the bankruptcy court. In the Ninth Circuit, an appellate court may consider an issue, even if not ruled on by the bankruptcy court, so long as it was "raised sufficiently for the trial court to rule on it." *In re E.R. Fegert, Inc.*, 8887 F.2d 955, 957 (9th Cir. 1989). Thus, even where the bankruptcy court did not itself rule on it, "intermediate appellate courts may consider any issue supported by the record." *Id.* Here, the trial transcript shows that judicial estoppel was argued to the bankruptcy court. *See* Dkt. # 12-5, p. 37 (arguing that the Meyers "should be estopped, under case law from the Ninth Circuit" because they knew of the allegedly misleading information prior to filing for bankruptcy); Dkt. # 27, p. 49 (response by Mr. Meyers to question by NWTS counsel,

admitting that he did not inclue his claims against NWTS in the bankruptcy schedule); *Id.* at pp. 45-46 (response by Meyers admitting that his "confusion began" upon receiving notice of default in July 9, 2010, prior to filing bankruptcy). The Court consequently finds that the record is sufficiently developed to allow it to reach the merits of the judicial estoppel issue.

Nonetheless, the Court agrees with the Meyers that application of judicial estoppel would be inequitable, where the case law underlying their claims against NWTS, and on which Judge Overstreet relied, only arose from 2012 – two years after the Meyers filed for bankruptcy. Specifically, Judge Overstreet recognized that the Washington Supreme Court's decision in *Bain v. Metropolitan Mortgage Group, Inc.*, 175 Wash.2d 83, 10, 285 P.3d 34 (2012), and its progeny had changed the legal landscape of the Washington Deed of Trust Act. *See* MD at pp. 16-18. Whereas pre-*Bain* decisions had generally not recognized a pre-foreclosure cause of action under the DTA, Judge Overstreet followed the 2013 appellate decisions in *Walker v. Quality Loan Service Corp.*, 176 Wash.App. 294, 308 P.3d 716 (Wash.Ct.App. 2013) and *Bavand v. OneWest Bank, F.S.B.,* 176 Wash.App. 574, 309 P.3d 636 (Wash.Ct.App. 2013) in finding that the Meyers may pursue a pre-foreclosure cause of action under the DTA. Similarly, Judge Overstreet based her CPA analysis on the Washington Supreme Court's recent clarification in *Klem v. Washington Mutual*, 176 Wn.2d 771, 790, 295 P.3d 1179 (2013) that a trustee's failure to exercise independent discretion as an impartial third party may be actionable as an unfair and deceptive practice under the CPA.

Accordingly, the Meyers assertion of claims against NWTS in the adversary proceeding is not "clearly inconsistent" with their failure to list claims against NWTS on their bankruptcy schedule, as they only became cognizable several years after their bankruptcy filing. Further, the

ORDER REVERSING BANKRUPTCY COURT - 10

change in intervening law undercuts the assertion that the bankruptcy court was misled by the failure to list these claims, since the claims arguably could not have been considered assets at the time the bankruptcy was filed. Given the unsettled and shifting state of DTA law in Washington, the Court declines to find the Meyers judicially estopped from pursuing their claims against NWTS.

## B. Violation of Deed of Trust Act

While, as Judge Overstreet recognized, the legal landscape of the DTA had changed considerably since *Bain*, it has changed once again since Judge Overstreet issued her memorandum decision. Judge Overstreet reasonably relied on the Washington appellate court decisions in *Walker* and *Bavand* to conclude that the "Washington courts have spoken" in rejecting the earlier holding in *Vawter v. Quality Loan Service Cop.*, 707 F.Supp.2d 1115, 1123 (W.D. Wash. 2010) that there is no cause of action for violation of the DTA where no trustee's sale has occurred. However, since the parties filed their opening briefs in this appeal, the Washington Supreme Court released its decision in *Frias*, in which it held that "there is no actionable, independent cause of action for monetary damages under the DTA based on DTA violations absent a completed foreclosure sale." *Frias v. Asset Foreclosure Services, Inc.*, 181 Wash.2d 412, 429, 334 P.3d 529 (2014). *Frias* thereby overruled the conflicting holdings of *Walker* and *Bavand* and now clearly bars the Meyers' DTA claim, which they admit is for "pre-sale [] compliance with the DTA." *See* Appellee's Opening Brief, Dkt. # 23, p. 20 (asserting that "this case involves a pre-sale challenge to the foreclosure sale in which Mr. and Mrs. Meyer brought suit against the purported lenders, servicers, and trustee under RCW 61.24.130. No sale has occurred.") (emphasis in original). Accordingly, this Court's *de novo* review of current law requires it to reverse Judge

ORDER REVERSING BANKRUPTCY COURT - 11

Overstreet's determination as to the Meyers' DTA claim.

## C. Violation of Consumer Protection Act

At the same time that *Frias* abrogated the pre-sale DTA cause of action, it confirmed that violations of the DTA may nonetheless be actionable under the CPA even in the absence of a completed foreclosure sale. *Frias*, 181 Wash.2d at 430. The Court also determined that such claims are governed by ordinary principles applicable to all CPA claims developed under this independent statutory cause of action and its corresponding body of case law. *Id.* at 432; *see also Lyons v. U.S. Bank Nat. Ass'n*, 181 Wash.2d 775, 784, 336 P.3d 1142 (2014) ("*Frias* clearly resolves the first issue in this case. Lyons cannot bring a claim for damages under the DTA in the absence of a sale, but she may bring a claim for similar actions under the CPA."). Thus Judge Overstreet did not err in determining that the Meyers could maintain a cause of action under the CPA based on the alleged failure of NWTS to comply with the DTA. *See* MD at p. 23. The question for this Court thus becomes whether the Meyers have established all of the elements of their CPA claim.

The elements of a CPA claim are well-established and not in dispute. To prevail on her CPA claim, a plaintiff must prove the following elements: (1) an unfair or deceptive act or practice; (2) the act or practice occurred in trade or commerce; (3) the act or practice impacts the public interest; (4) the act or practice caused injury to the plaintiff in his business or property; and (5) the injury is causally linked to the unfair or deceptive act. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780, 719 P.2d 531 (1986). Whether a particular act or practice is "unfair or deceptive" is a question of law that this Court reviews *de novo*. *See Lyons*, 181 Wash.2d at 786. As a general matter, the CPA is to be "liberally construed that its beneficial

ORDER REVERSING BANKRUPTCY COURT - 12

purposes may be served." RCW 19.86.920. On appeal, NWTS disputes Judge Overstreet's findings with respect to each prong of the CPA except the second, occurring in trade or commerce, prong.

### 1. Unfair or Deceptive Act or Practice

Judge Overstreet identified four separate acts or practices by NWTS that violated the DTA and also met the first prong of the CPA. These were: (1) NWTS failed to verify whether the servicer, ACS/Wells Fargo, had the requisite authority to issue the Beneficiary Declaration in accordance with RCW 61.24.030(7); (2) NWTS accepted the Loss Mitigation Form from ASC without evidence that ASC was the authorized agent of U.S. Bank for the purpose of executing this document; (3) NWTS referred to itself in the Notice of Default as the authorized agent for the beneficiary when it was already the successor trustee; and (4) NWTS included the same address for the beneficiary and service in the Notice of Default, rather than including a separate address and phone number for either U.S. Bank (the Note holder) or GEL2 (the Note owner).

### a) Reliance on Beneficiary Declaration and Loss Mitigation Form

The Deed of Trust Act, RCW 61.24.030, lays out requisites for a trustee's sale in a nonjudicial foreclosure on a deed of trust. Among these requirements, subsection (7) provides:

> (a) That for residential property, before the notice of a trustee's sale is recorded, transmitted, or served, the trustee shall have proof that the beneficiary is the owner of any promissory note or other obligation secured by the deed of trust. A declaration by the beneficiary made under the penalty of perjury stating that the beneficiary is the actual holder of the promissory note or other obligations secured by the deed of trust shall be sufficient proof as required under this subsection.
> (b) Unless that trustee has violated his or her duty under RCW 61.24.010(4), the trustee is entitled to rely on the beneficiary's declaration as evidence of proof required under this subsection.

ORDER REVERSING BANKRUPTCY COURT - 13

RCW 61.24.030(7). RCW 61.24.010(4) in turn provides that the "trustee or successor trustee has a duty of good faith to the borrower, beneficiary, and grantor."

The Act further requires that a Notice of Default include a declaration from the beneficiary or authorized agent, referred to as a "Loss Mitigation Form," certifying that it has contacted or tried to contact the borrower. RCW 61.24.031(2); *see also* RCW 61.24.031(9) (specifying the required contents of the Foreclosure Loss Mitigation Form). As with the Beneficiary Declaration, the Act provides trustees a safe harbor to rely on this declaration, absent a violation of the trustee's duty of good faith to the borrower, beneficiary, or grantor. *See* RCW 61.24.031(2) ("Unless the trustee has violated his or her duty under RCW 61.24.010(4), the trustee is entitled to rely on the declaration as evidence that the requirements of this section have been satisfied, and the trustee is not liable for the beneficiary's or its authorized agent's failure to comply with the requirements of this section.").

Here, it is undisputed that NWTS accepted and relied on both a Beneficiary Declaration and Loss Mitigation Form. Nonetheless, Judge Overstreet determined that this reliance was improper. As to the former, Judge Overstreet recognized that NWTS "had a declaration from Wells Fargo, the purported attorney-in-fact for U.S. Bank." MD at p. 21. While noting the existence of three powers of attorney issued by U.S. Bank to Wells Fargo in 2007 which "would have given Wells Fargo broad powers to sign documents related to foreclosures on behalf of U.S. Bank," Judge Overstreet found that "NWTS had no notice or knowledge of any of these powers of attorney or any other agreement substantiating the authority of Wells Fargo to act on behalf of U.S. Bank." *Id.* Judge Overstreet found that NWTS was not entitled to rely on a Beneficiary Declaration where it lacked such proof. She similarly found that NWTS could not rely on the Loss Mitigation

ORDER REVERSING BANKRUPTCY COURT - 14

Form, signed by John Kennerty on behalf of ASC, because it lacked evidence that ASC was the authorized agent of U.S. Bank for the purpose of executing the document. MD at p. 23. In essence, as amici point out, Judge Overstreet held NWTS to an affirmative duty to investigate the veracity of the representations contained in the declarations on which it relied.[1]

Once again, case law developed since Judge Overstreet issued her decision has circumscribed the situations in which such an affirmative duty would maintain. First, courts have clarified that, in accordance with the plain language of the statute, the trustee is entitled to treat the representations in a beneficiary declaration as true and rely on the declaration in initiating nonjudicial foreclosure proceedings, absent evidence conflicting with the declaration's representations or a separate violation of the trustee's duty of good faith. *See, e.g. Trujillo v. Northwest Service, Inc.*, 181 Wash.App. 484, 326, P.3d. 768 (Wash.Ct.App. 2014) ("Absent conflicting evidence, the declaration should be taken as true.")[2]; *Pelzel v. Nationstar Mortg., LLC*, 2015 WL 1331666, *6 (Wash.Ct.App. 2015). The Meyers cite to no authority suggesting that a different standard should pertain with respect to reliance on the Loss Mitigation Form, and the Court can identify none.

The fact that Wells Fargo signed the Beneficiary Declaration as attorney-in-fact fact for U.S. Bank, where specifically authorized to do so by power of attorney agreements, does not change this result. *See, e.g. id.* ("[W]e hold that under RCW § 61.24.030(7)(b), the declaration of a

[1] NWTS asks the Court to find admission of John Kennerty's *Geline* testimony improper under Federal Rule of Evidence 804. The Court declines to do so, as it is unable to find that Judge Overstreet clearly erred in determining that Kennerty was unavailable as a witness and that his testimony fell under the former testimony exception to the rule against hearsay, FRE 804(b)(1), or that the admission, if in error, affected the bankruptcy court's disposition. Further, it appears that NWTS failed to lodge objections to any specific portions of the testimony upon Judge Overstreet' s invitation. *See* DA at p. 204.

[2] The Washington Supreme Court's recent acceptance of a petition to review *Trujillo* does not affect this Court's decision. The central holding of *Trujillo*, that RCW 61.24.030(7) is satisfied by proof that the beneficiary is either the owner or holder of the promissory note, is not implicated in this case, where the Beneficiary Declaration identified U.S. Bank as both the Note's holder and trustee for its owner, GEL2.

ORDER REVERSING BANKRUPTCY COURT - 15

beneficiary's agent stating the beneficiary is the note's holder is sufficient proof that the beneficiary is the note's holder, unless the trustee has violated its duty of good faith in some other way."); *U.S. Bank Nat. Ass'n v. Woods*, 2012 WL 2031122 (W.D. Wash. 2012) (rejecting borrowers' claims under the DTA where lenders submitted evidence showing that NWTS was in possession of a declaration signed by Wells Fargo as attorney-in-fact for U.S. Bank"); *see also Knecht v. Fid. Nat. Title Ins. Co.*, 2013 WL 7326111 (W.D. Wash. 2013) ("Mr. Knecht complains that there is no recorded power-of-attorney document establishing AHMSI's right to act on DB's behalf, but he points to no authority requiring AHMSI to record such a document. He also fails to establish his own standing to object to AHMSI's acting on DB's behalf."). This result is so because an authorized agent is empowered to make binding declarations within the scope of its agency on its principal's behalf such that the declarations of the agent are deemed to be those of the principal itself. *Ennis v. Smith*, 171 Wash. 126, 130, 18 P.2d 1 (1993).

Further, courts have since uniformly rejected the invitation to import a duty to verify the information contained in the beneficiary declaration into the trustee's duty of good faith. In *Pelzel*, for instance, the Washington Court of Appeals declined to find a DTA violation where the only violation of the trustee's duty of good faith alleged was in its reliance on the beneficiary declaration as proof that the beneficiary was the note's holder. *See Pelzel*, 2015 WL 1331666 at *6. In an unpublished decision, the Ninth Circuit also recently rejected a borrower's argument that NWTS violated its duty of good faith by failing to obtain proof that OneWest was the promissory note's owner, where OneWest had declared itself to be the note's holder on the beneficiary declaration. The Ninth Circuit found that "NWTS complied with its obligation under the statute when it relied on OneWest's declaration under penalty of perjury," thereby refusing to hold NWTS

ORDER REVERSING BANKRUPTCY COURT - 16

to an affirmative duty to investigate. *Bavand v. OneWest Bank FSB*, 587 Fed.Appx. 392, 394 (9th Cir. 2014). Courts in this district have also been uniform in declining to import an affirmative duty to verify into the trustee's duty of good faith. *See, e.g. Mickelson v. Chase Home Fin.* LLC, 2012 WL 6012791 (W.D. Wash. 2012), *aff'd* , 2014 WL 2750133 (9th Cir. 2014) ("The duty of good faith does not create a duty to conduct an independent verification of sworn affidavits….NWTS relied, as they are specifically permitted to do, on a declaration made under penalty of perjury. They did not breach their duty of good faith in doing so."); *In re Butler*, 512 B.R. 643, 657 (Bankr. W.D. Wash. 2014) (finding that NWTS was "entitled to rely on the Beneficiary Declaration, and had no duty to undertake an independent investigation").

Here, as in *Pelzel*, Plaintiffs have failed to show that NWTS breached its duty of good faith independent of its allegedly improper reliance on the Beneficiary Declaration and Loss Mitigation Form without investigating their veracity. Further, NWTS could not have been alerted to any errors in the information attested to on these documents, as it is undisputed that the information they contained was in fact true. Absent a showing that NWTS violated its duty of good faith *independent* of its reliance on the declarations, the vast weight of case law now deems NWTS's reliance without further inquiry to be proper.

Plaintiffs' citations to the recent Washington Supreme Court decisions *Lyons* and *Klem* only lend further support to this conclusion. The Court in *Klem*, a decision heavily relied on by Judge Overstreet, opined that a trustee owes a duty to act impartially toward both parties to a foreclosure proceeding. *Klem*, 176 Wash.2d at 790. The Court found that a trustee violated this duty, and could be liable under the CPA for doing so, where it deferred to a lender on whether to postpone a foreclosure sale and ignored entirely the dozens of requests by the guardian for the

ORDER REVERSING BANKRUPTCY COURT - 17

borrower to postpone the sale. *Id.* at 791. While Judge Overstreet reasonably read *Klem*'s pronouncements on the duty of impartiality to be implicated in this case, the Washington Supreme Court subsequently made clear that this duty is not so capacious. In *Lyons,* the Supreme Court found that a trustee had violated its duty of good faith by summarily deferring to Wells Fargo's preferred course of action and ignoring the borrower's vociferous protests that the situation between the parties had changed subsequent to which NWTS lacked the authority to foreclose. *Lyons*, 181 Wash.2d at 788. In both these cases, the Court faulted the trustee for failing to investigate only when confronted with a host of information about irregularities in the foreclosure process. By contrast, no such irregularities exist in this case, NWTS had no notice of errors in the declarations or problems in the foreclosure proceeding, and all parties recognized that NWTS possessed authority to foreclose.

While the Court agrees with both Judge Overstreet and the Meyers that there may be good reason to require trustees to take some action or institute some process to ensure that the information on which they rely is correct, the Washington legislature has evidently chosen not to follow such a course. The Court finds that a proper reading of *Lyons* is that a trustee has a duty to investigate only when it "knew about [] conflicting information regarding [its] right to initiate foreclosure" or when the beneficiary declaration contained an inherent ambiguity. *See Lyons*, 181 Wash.2d at 788, 791 (holding that NWTS may not "just rely on [an] ambiguous declaration"). No such duty would be triggered in this case.

Finally, a technical violation of the DTA is not in itself sufficient to constitute an unfair or deceptive practice. As the Ninth Circuit noted, "Washington state courts have required the borrower to show prejudice before they will set aside a trustee's foreclosure sale in the face of

ORDER REVERSING BANKRUPTCY COURT - 18

allegations of technical errors." *See Bavand*, 587 Fed.Appx. at 394-95 (citing *Amresco Independence Funding, Inc. v. SPS Properties, LLC*, 199 P.3d 884, 886-87 (Wash.Ct. App. 2005)); *see also Steward v. Good*, 51 Wn.App. 509, 754 P.2d 150 (1998) (locating a "requirement that prejudice be established" where a "technical violation" of the DTA occurs and there was "no showing of harm to the debtor"). Even if NWTS had a duty to investigate the veracity of the declarations, its investigations would have only revealed that the information contained in them was correct. Accordingly, the Meyers cannot show that they were prejudiced or deceived, even if NWTS did not strictly comply with the DTA. For all these reasons, the Court declines to find that NWTS's reliance on the Beneficiary Declaration and Loss Mitigation Form without independent verification constituted an unfair or deceptive practice in violation of the CPA.

**b) Issuance of Notice of Default as an Authorized Agent**

Judge Overstreet also located a deceptive practice in NWTS's reference to itself as authorized agent for the beneficiary in the Notice of Default when the evidence established that NWTS was already the successor trustee as the time it issued the Notice. The Court finds that Judge Overstreet's conclusion to this effect is not supported by the statutory language.

Under the DTA, a notice of default may be issued by the "beneficiary or trustee." RCW 61.24.030(8); *see also* RCW 61.24.031(1)(a) ("A trustee, beneficiary, or authorized agent" may issue a notice of default). Because NWTS had already been appointed successor trustee at the time that it issued the notice, the statute provided it authority to do so, regardless of whether it was actually an authorized agent for the beneficiary as well.

Further, if improper, the Meyers have made no showing that they were prejudiced by NWTS's reference to itself as an agent rather than trustee, where NWTS indisputably had

ORDER REVERSING BANKRUPTCY COURT - 19

authority either way to issue the Notice. *See In re Butler*, 512 B.R. at 657 (rejecting identical argument on the grounds that even if NWTS was not the beneficiary's authorized agent, "Plaintiff did not address why a reference to [NWTS] being One West's 'duly authorized agent' would be a *material* violation of the Deed of Trust Act. It is unclear what alleged harm stemmed from that particular inaccuracy.") (emphasis in original). While *Bain* recognized that a CPA violation may lie where a trustee closes without authority, the Meyers here have not made a showing that NWTS lacked the authority to foreclose or issued the Notice without authority to do so. The Court consequently concludes that this alleged inaccuracy did not constitute an actionable unfair or deceptive act.

   **c)   Inclusion of Same Address for Owner and Servicer in Notice of Default**

   Finally, there does not appear to be any support for Judge Overstreet's conclusion that NWTS violated the CPA by only providing an address and phone number for ACS on the Notice of Default. RCW 61.24.030(8)(l) provides that the notice of default shall contain the following information:

> In the event the property secured by the deed of trust is residential real property, the name and address of the owner of any promissory notes or other obligations secured by the deed of trust and the name, address, and telephone number of a party acting as a servicer of the obligations secured by the deed of trust.

Here, NWTS provided the same address and phone number for both the Note holder/beneficiary, U.S. Bank, and its servicer, ACS. NWTS argues that it was proper for it to provide U.S. Bank's phone number "care of" ACS because U.S. Bank was merely the legal title holder for the Note's owner, GEL2, which lacked a physical address and phone number, and because ACS was the relevant entity to address the Meyers' queries.

   Regardless of whether NWTS strictly complied with the language of this statutory

ORDER REVERSING BANKRUPTCY COURT - 20

provision, the Meyers were unable to point to any way in which they were deceived or otherwise prejudiced by only receiving a phone number for ACS, either at trial or when specifically prompted by this Court upon oral argument. Mr. Meyer was able to immediately reach a Wells Fargo employee through the ACS phone number, where Wells Fargo was acting as attorney-in-fact for U.S. Bank. While the Meyers claim that they would not have had to hire attorney Jones to issue a Qualified Written Request had they known of their lender's true identity, the QWR itself makes no mention of the notice of default and instead complains of inaccuracies in accounting of the loan, robo-signing, and predatory lending practices. *See* DA at pp. 138-159. The Meyers were also able to engage in three, albeit apparently unsuccessful, mediation sessions after contacting ACS. Even if NWTS did not strictly comply with this statutory provision, its deviation was only a technical one, and liability cannot lie where the Meyers could not show at trial that the practice was likely to deceive. *See Panag v. Farmers Ins. Co. of WA*, 166 Wash.2d 27, 50, 204 P.3d 885 (2009) ("Deception exists if there is a representation, omission or practice that is likely to mislead a reasonable customer.").

## 2. Injury and Damages

Before a violation of the CPA may be found, an injury to the claimant's business or property must be established. *Hangman*, 105 Wash.2d at 792. Plaintiffs may only recover for injuries that they demonstrate were proximately caused by a defendant's unfair or deceptive practices. *See Bhatti v. Gild Mfg. Co.*, 2013 WL 6773673, *3 (9th Cir. 2013) (rejecting CPA claim premised on DTA violation because the "cause prong" was not satisfied). The injury "need not be great" and no monetary damages need be proven. *Mason v. Mortgage America, Inc.*, 114 Wash.2d 842, 854, 792 P.2d 142 (1990). Nonquantifiable injuries suffice, although mental distress alone

ORDER REVERSING BANKRUPTCY COURT - 21

does not establish injury. *Stephens v. Omni Ins. Co.*, 138 Wash.App. 151, 180, 159 P.3d 10 (Wash.Ct. App. 2007). Incurring time and money to prosecute a CPA claim also does not suffice, *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wash.App. 553, 564, 825 P.2d 714 (1992), although "consulting an attorney to dispel uncertainty regarding the nature of an alleged debt" may. *Panag*, 166 Wash.2d at 62. Because damages are strictly limited to those in "business or property," lost wages are not compensable under the CPA. *Ambach v. French*, 167 Wn.2d 167, 216 P.3d 405 (2009).

Here, the record does not support Judge Overstreet's finding that the damages awarded were proximately caused by the alleged unfair or deceptive acts. As stated above, the QWR was addressed to the loan's servicers and raised no concerns about identification of the Note owner. The Court is also unable to discern how the Meyers' bankruptcy filing could have been proximately caused by any of the alleged deceptive acts, particularly given that the bankruptcy plan was confirmed even after the subject loan was removed from it. The Meyers' bankruptcy filing lists two automobile loans and a cumulative unsecured debt of $105,681.42 in addition to the home mortgage loan. *See* DA at pp. 94-110 (bankruptcy schedules). Although apparently precipitated by pending foreclosure proceedings, the bankruptcy filing was plainly not dependent on them, and in no event were NWTS's alleged DTA violations the but-for cause of the Meyers' Chapter 13 filing.

Similarly, the record does not support the finding that the Meyers' rent, deposits, and moving expenses were proximately cause by any of the allegedly deceptive acts by NWTS in initiating the foreclosure proceedings. Mr. Meyers testified that the family moved out before their house was foreclosed on after four years without making any mortgage payments. DA at pp. 231,

ORDER REVERSING BANKRUPTCY COURT - 22

233. The Meyers' decision to move out was precipitated by their default, not be any of the asserted technical violations of the DTA by NWTS. Finally, the lost wages that Judge Overstreet awarded are not compensable under the CPA as a matter of law. *See Ambach*, 167 Wn.2d at 409 (lost wages are compensable in personal injury, not CPA, actions).

Plaintiffs have undeniably suffered a great loss, and like many former homeowners, were the victim of an economic downturn and the cumulative decisions of the many exploitative actors that precipitated it. While the Court does not deny that the Meyers are victims, it simply cannot find that they were victimized by NWTS in a way that can be traced to the losses they have endured. Similarly, the Court in no way endorses the decision by NWTS to fulfill only the bare minimum of its duty of good faith to borrowers. A greater fiduciary standard may well be called for in light of the evident power differentials and access to information extent between lenders and borrowers; indeed, the nature of a trustee relationship seems to require more than what the Meyers were given in this case. Although a legislative fix may well be called for, this Court can do little more than chastise NWTS for not behaving with greater affirmative care toward vulnerable borrowers relying on them to act fairly and diligently. As Judge Jones recently remarked in a similar situation, "[t]he court can chide Defendants for abysmal customer service in a business tied intimately to its customers' financial and emotional well-being. The court cannot, however, change the basic truth that if a homeowner cannot pay her mortgage, she will ultimately lose her home." *Singh v. Federal Nat. Mortg. Ass'n*, 2014 WL 504820, *7 (W.D. Wash. 2014).

As current case law and the facts in the record do not support either the existence of actionably unfair or deceptive acts by NWTS or of a causal nexus between NWTS's acts and the Meyers' injuries, the Court concludes that the bankruptcy court erred in finding for the Meyers on

ORDER REVERSING BANKRUPTCY COURT - 23

their CPA claim and in granting damages.[3] *See Singh*, 2014 WL 504820 at *6 (dismissing CPA claim where plaintiff borrowers failed to show causation despite finding that borrowers pled sufficient fact to establish that defendant trustee violated its duty of good faith).

## CONCLUSION

For the reasons stated herein, the Court concludes that the Meyers failed to meet their burden of proof under Washington's Deed of Trust Act and Consumer Protection Act. The Court REVERSES the decision of the bankruptcy court and grants judgment in favor of Defendant-Appellant Northwest Trustee Service, Inc. on all claims.

Dated this 9th day of April 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

---

3 As the Court determines that the Meyers have not made a sufficient showing under multiple prongs of the CPA, it does not reach NWTS's argument that Judge Overstreet erred in finding the public interest prong to be satisfied.

ORDER REVERSING BANKRUPTCY COURT - 24